Temple, J., McFarland, J., and Van Fleet, J., concurred.

---

[L. A. No. 259.   Department One.—February 23, 1898.]

BRADNER W. LEE, Appellant, v. J. W. McCLELLAND, Respondent.

VENDOR AND PURCHASER—NOTE FOR PURCHASE MONEY—DEFENSE OF FRAUDULENT REPRESENTATIONS—MATTERS OF OPINION.—Exaggerated and even reckless declarations of a vendor of land or of his agent, which are but expressions of opinion as to the profit to be realized from the venture, whether such opinion be actual or pretended, are not such fraudulent representations as will avoid the contract of sale or which constitute a defense to a note for the purchase money; but in such case the purchaser must exercise his own judgment, and he will rely at his peril upon the expression of the vendor's opinion.

ID.—CHARACTER OF LAND—REPRESENTATIONS OF AGENT—INSPECTION OF LAND BY PURCHASER.—Where the purchaser had a convenient opportunity to inspect the land, and did in fact visit and inspect it, he cannot rely upon the representations of the vendor's agent as to the character of the land, if it does not appear that the agent in any way intentionally induced such reliance, and it appears that his representations as to the character of the land were in their nature matters of opinion, upon which it was the purchaser's duty to exercise his own judgment.

ID.—CONSENT TO NEW CONTRACT—CHANGE OF NOTE—WAIVER OF FRAUD.—Where the representations complained of were all made prior to the original contract of purchase, and the defendant, after taking possession under the contract, failed to make the deferred payment required, and asked for further time and a reduction of interest, and subsequently a new contract was entered into under reduced terms, and the former

note was canceled and a new note executed, without any objection raised that the purchaser had been wronged or defrauded during the life of the first contract or note, notwithstanding full opportunity to ascertain the character of the land, and having voluntarily entered into a new contract more favorable to him in its terms and secured at his own solicitation, and without disclosing any ground of objection to the original contract and note, he must be held to have waived the fraud, if any, which might have vitiated the first contract and note.

ID.—DELAY IN USE OF MEANS TO DISCOVER FRAUD.—Where the alleged fraudulent representations consisted of statements to the effect that the land was "good orange land," and the defendant was in possession, and had the means of acquiring knowledge on that subject, it was his duty to do so, as against his right to set up the defense of fraud against his note for the purchase money, and it cannot be successfully urged that he did not discover the worthlessness of the land for that purpose for a period of three years, and until after the second contract and note were executed. Means and opportunity of acquiring knowledge are, in such case, the equivalent of knowledge.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Walter Van Dyke, Judge.

The facts are stated in the opinion of the court.

Wells & Lee, and Calvin Edgerton, for Appellant.

Creighton & Creighton, F. E. Davis, and Anderson & Anderson, for Respondent.

VAN FLEET, J.—Action on promissory note indorsed to plaintiff before maturity. The defense was that the note was given to plaintiff's indorser, one Unruh, as evidence of a deferred payment under an executory contract for the sale of certain land and water stock; that said contract and the note were procured through the fraudulent representations of Unruh as to the character of the land, and that plaintiff took the note with constructive notice of the fraud. Defendant had judgment, and plaintiff appeals therefrom and from an order denying him a new trial, his principal contention being that the evidence does not warrant the verdict.

It cannot be said that there was no evidence to justify the jury in finding that plaintiff was not an indorsee for value in due course. We think it very strongly tended to show that plaintiff really took and held the note merely for collection.

But we are clearly of the opinion that there was no evidence legally tending to establish the alleged fraud on the part of Unruh; that the only representations as to the character of the land were in their nature mere matters of opinion, and in no sense representations of substantive facts which may be made the basis of fraud, however false they may have been. All that the evidence tended to show in that regard was, in substance, that Unruh, who was the agent of one Baldwin in subdividing and disposing of some lands of the latter in Los Angeles county, with accompanying water privileges, and who was familiar with the requirements for the successful cultivation of oranges, represented to defendant, who was ignorant of the value or character of the land, that he ought to take a piece of the land and put it in oranges; "that it was good orange land; would raise oranges," and make defendant a living; that it "was first-class ground"—"decomposed granite" or "gravel" and "free from frost." To sum it up in defendant's own language: "He said it was fine orange land, and I could put out oranges and go east in the summer and come back and I would get a crop of oranges; and on the strength of that statement I purchased the land."

It is quite obvious that such statements made by a seller of land, even admittedly to induce a purchase, cannot be made the predicate of false or fraudulent representations such as will avoid a contract of sale. They are the exaggerated, and it may be the reckless, declarations of an eager trader, holding out the golden promise of profit to induce a sale; but after all they are but the expressions of the vendor's opinion, actual or pretended, upon which the purchaser will rely at his peril. As said in *Rendell v. Scott,* 70 Cal. 514:

"It is apparent to us that the matters alleged as constituting the fraud were matters of opinion rather than of facts. It was certainly matter of opinion when the plaintiff stated that the land was the best ranch in Ione valley, and was very rich and productive, and would produce fifty bushels of wheat to the acre; that a portion was good alfalfa land, and that another portion was rich in mineral deposits; and the other matters alleged may well be classed under the head of matters of opinion rather than a false representation of facts. There is no averment which excludes the idea of personal inspection by the purchaser.

"In such a case the purchaser should exercise his own judgment, and is not entitled to relief in equity."

In this case, the evidence shows that defendant at the time of the purchase was living within a short distance of the land, and not only had the convenient opportunity, but availed himself of it, to visit the land and inspect it for himself. He says: "I saw it was sandy soil in 1887, and the condition in 1890 was just the same as it was in 1887, but I knew nothing about land." He testified, it is true, that he relied entirely upon the representations of Unruh as to the character of the land, but it does not appear that the latter in any way intentionally induced such reliance, and, as we have seen, it was defendant's duty to exercise his own judgment in the matter.

But in another respect the evidence does not sustain the verdict, even were it conceded that the representations were of a character to show fraud. The original contract of purchase was entered into on the first day of February, 1887, and all the representations complained of were made prior to that date. By this contract defendant was to have the land and water stock for the sum of three thousand six hundred and ten dollars, of which twelve hundred and three dollars and thirty-four cents was paid down, and the balance was to be paid in equal installments in one and two years, represented by defendant's notes with interest at eight per cent per annum, compounded. The contract gave defendant the right of immediate possession of the land, with use of the water, and to proceed to improve and cultivate it while the agreement continued in force. Defendant did not pay these notes nor the interest, but wanted further time and a reduction in the rate of interest. Finally, on the first day of February, 1890, when the amount of defendant's indebtedness was some three thousand and thirty-one dollars and ninety cents, at his solicitation, and in consideration of the settlement of certain differences between defendant and Baldwin, and because "of the boom being busted," as expressed in the evidence, this original contract and the notes were canceled, the amount of the debt reduced to two thousand five hundred dollars, and the rate of interest to five per cent per annum, for which sum defendant gave a single note, payable in five years; and a new contract of purchase was then entered into upon these terms,

similar in all other respects to the first.    It is upon this last mentioned note that the action was brought.    Up to the time of the making of this new contract and note, no complaint or even intimation had come from defendant that he had been in any way wronged or defrauded in the transaction; in fact, no such claim appears ever to have been made until the beginning of this action, when the assertion of fraud was first put forth in his answer.    Manifestly the defendant is precluded from now making such defense.    He had full opportunity during the life of the first contract to investigate and ascertain the character of the land in the respect in which it is now claimed to fall short of the representations made; and having chosen, without objection, or the disclosure of the facts now asserted as vitiating the contract in its inception, to voluntarily enter into a new contract more favorable to him in its terms and secured at his own solicitation, he must be held to have waived the fraud, if any, which might have vitiated the first.    (*Nounnan v. Sutter County Land Co.*, 81 Cal. 1, 7; *Blen v. Bear River etc. Co.*, 20 Cal. 602; 81 Am. Dec. 132.)

It is urged that defendant did not discover the worthless character of the land until after the making of the second contract, because he did not have it set out in oranges until after that time.    It is true that the evidence shows that he first put it to that use in 1890, but it is also true that he had the possession and the right and opportunity to do so three years before that, and could as readily have made the alleged discovery earlier as when he did; and this, as against his right to set up the defense of fraud, it was his duty to do.    Means and opportunity of acquiring knowledge in such a case are the equivalent of knowledge.

It is said that the verdict was right in any event, because there was no tender of the water stock with the deed of the land.    It does not appear that there was any objection made to the sufficiency of the tender.    But, under the terms of the contract, we do not think there was any necessity to tender either the deed or the stock until defendant should pay or offer to pay the balance of the purchase price.

The judgment and order are reversed.

Harrison, J., and Garoutte, J., concurred.