[Civ. No. 1986.   Second Appellate District.—July 22, 1916.]

## I. W. GLEASON et al., Appellants, v. C. J. PROUD, Respondent.

CONTRACT—TRUTH OF REPRESENTATIONS—RELIANCE UPON.—A contracting party is entitled to rely on the express statement of an existing fact, the truth of which is known to the opposite party and unknown to him, as the basis of a mutual agreement, and he is under no obligation to investigate and verify the statements to the truth of which the other party to the contract, with full means of knowledge, has deliberately pledged his faith.

ID.—EXCHANGE OF REAL PROPERTY FOR BONDS—VALUE OF BONDS—LACK OF MISREPRESENTATION AS TO VALUE.—Such principles, however, are inapplicable to an action to rescind a contract of exchange of real property for bonds of a corporation, on the ground of misrepresentation as to the value of the bonds, where the agent of the defendant furnished the plaintiff with all the information that his principal and himself had concerning the value of the bonds, which consisted of letters written by third parties, and requested the plaintiff to investigate the writers of the letters.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. J. P. Wood, Judge.

The facts are stated in the opinion of the court.

Harold A. Gilman, Tanner, Taft & Odell, and Tanner, Odell, Odell & Taft, for Appellants.

Victor T. Watkins, Thorpe & Hanna, Joseph Musgrove, and Charles W. Lyon, for Respondent.

CONREY, P. J.—This is an action to enforce an alleged right of rescission of a contract and exchange of property between plaintiffs and defendant. The plaintiffs appeal from the judgment and from an order denying their motion for a new trial.

The alleged misrepresentations relate to bonds of the Bisbee Light & Power Company, an Arizona corporation, which were transferred by defendant to plaintiff I. W. Gleason as the principal part of the consideration given by Proud for the property conveyed to him by Gleason. The transaction took

place in September and October, 1908. Respondent Proud had acquired these bonds a few weeks before that time by transfer from A. W. McPherson and W. F. Nordholt in consideration of real property conveyed to them by Proud. In that transaction one H. A. Landwehr had acted as an agent for Proud, and in that way had acquired some knowledge concerning the Bisbee bonds and Proud's ownership thereof.

In the original complaint filed in this action it was alleged that the defendant made certain representations of fact upon which the plaintiffs relied, and that such representations were false; also, that the defendant concealed certain material facts which, if they had been known to plaintiffs, would have caused the plaintiffs to refuse to enter into the contract. At the trial the evidence wholly failed to establish any intentional misrepresentations or concealments of fact made by the defendant or his agent. Without abandoning their claim that the representations complained of were known by the defendant and his agents to be false, the plaintiffs at the trial further amended their complaint by alleging that the defendant was not, nor were his agents, warranted in making said assertions or statements by the information they possessed when the same were made, although they may have believed them to be true. Presumably this amendment was made to bring the case within the terms of the definition of actual fraud contained in section 1572 of the Civil Code, whereby actual fraud consists of certain acts and circumstances, one of which is "the positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true."

The plaintiffs do not base their action upon any representations made personally by the defendant. Their claim is that Landwehr was Proud's agent, and that Landwehr made or caused to be made the representations upon which they relied. On this appeal it is contended that the court erred in sustaining objections to questions asked of the witness Landwehr designed to show the fact of his agency by proving declarations made by him as to the person for whom he was acting; also, that the court erred in holding that there was not sufficient evidence to show that Landwehr was the agent of Proud, and in refusing to permit evidence to be introduced relating to the untruthfulness of the representations which he made or caused to be made.

In view of our conclusion upon another phase of the case, hereafter to be stated, it will not be necessary to discuss these alleged errors; and for the purposes of the argument we shall assume, without deciding, that Landwehr was the agent of Proud, and that the facts which the plaintiffs sought to prove to be untrue were in fact untrue. For if Landwehr, acting on behalf of the defendant, did not make the representations complained of, or did not cause the plaintiffs to rely upon any representations as coming from him or vouched for by him, then plaintiffs cannot maintain this action. There is no substantial conflict in the evidence in this case. The defendant was content to submit the case upon the testimony of the plaintiffs and their witnesses.

When respondent was negotiating the exchange by which he acquired the Bisbee bonds, the parties with whom he was transacting that business furnished him two letters purporting to state facts concerning the Bisbee bonds and their value. These letters were dated August 27, 1908, were addressed to H. A. Landwehr, one of them was signed by A. W. McPherson, and the other by Bank of Santa Monica, per H. J. Englebrecht, cashier. In the course of the negotiations leading to the transaction involved in the present action, Landwehr delivered these letters to Mr. Gleason and Mr. Gleason, besides reading those letters, had personal interviews with Mr. Englebrecht and also with Mr. Nordholt. These letters contained all of the information that Landwehr or the defendant Proud had concerning the bonds, and it is upon the falsity of the statement of facts therein contained that the plaintiffs rely. To ascertain the circumstances under which these letters were received by Gleason, we will take his own testimony: ''At the time when Mr. Landwehr gave those letters, he said that they were the letters that had been delivered to him in connection with this deal between Mr. Proud and McPherson and Nordholt, describing the bonds in that deal. He asked me to go down and have a talk with Mr. Englebrecht. . . . These letters were written to Mr. Landwehr in connection with that deal, less than a month before. The letters themselves show that that was the purpose.'' Again he testified, referring to Landwehr, as follows: ''I don't think he said anything about knowing anything about the bonds himself. I don't remember that he said that this was the information he had on it; he said this was the information he did have. I don't think

he said that was all the information he had. He did not profess to know anything about it himself; as a matter of fact, he did not tell me to investigate for myself. *He told me to investigate these men."* Again he said: "Mr. Proud made no representations except through his agents, the persons that I have spoken of, Mr. Landwehr and the other parties that made the representations that induced me to make a trade of my property. The letters and the statements of McPherson and Nordholt induced me to part with my property to Mr. Proud. If it had not been for those letters, I would never have parted with the property." And again: "He did not profess to know anything superior to the evidence that he had put up to me. That was far superior to anything he might have. I did not consider any opinion that he might have. He had an opinion. He said he thought that it was all right. He did not say that he based his information upon anything other than the representations that he had from these men who wrote the letters. I believe he gave me all the information he had."

It will be noted that Landwehr did not make any positive assertions with respect to the facts contained in those letters, and did not even vouch for the writers of the letters. He advised appellants to investigate the men who wrote the letters, and appellants acted upon that advice. Being acquainted with Mr. Bittinger, an officer in the First National Bank of Los Angeles, appellant I. W. Gleason inquired of Mr. Bittinger, asking if he knew Mr. Englebrecht and if he could rely upon a letter of that kind; to which Mr. Bittinger replied that he did know Englebrecht and he was a good fellow, and Bittinger did not think he would write a letter of that kind unless he knew the facts contained in it to be true. It was after receiving that assurance that appellant went to see Mr. Englebrecht, and in conversation with him obtained further statements favorable to the bonds. We entirely agree with counsel for appellants in their contention that a contracting party is entitled to rely on the express statement of an existing fact, the truth of which is known to the opposite party and unknown to him, as the basis of a mutual agreement; and that he is under no obligation to investigate and verify the statements to the truth of which the other party to the contract, with full means of knowledge, has deliberately pledged his faith. (*Spreckels* v. *Gorrill,* 152 Cal. 383, 395,

[92 Pac. 1011].)   But the facts of this case are not such as to make those principles applicable here.   There is a total absence of express statement or positive assertion of the alleged untrue facts by Landwehr.   There is a further total absence of relationship between respondent and the writers of those letters, or of any voucher for the reliability of those persons either by the respondent or his agent, such as would be necessary before making the respondent responsible for their statements.

Without regard to other questions discussed in the briefs, it thus clearly appears upon the record that plaintiffs are not entitled to recover.

The judgment and order are affirmed.

James, J., and Shaw, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on August 21, 1916, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 18, 1916.