[L. A. No. 3792. Department One.—June 29, 1917.]

## FANNIE M. GLEASON et al., Appellants, v. A. W. McPHERSON et al., Respondents.

FRAUD—SALE OF CORPORATION BONDS—EXPRESSIONS OF OPINION.—In an action for damages for alleged fraudulent representations in the sale of corporation bonds, statements of the sellers to the effect that the money invested in the bonds would be safe, that they were "gilt-edge security," that they would command a ready sale, and that the interest and principal would be duly paid, are mere statements of opinion, and not sufficient to form the basis of a recovery for damages, the parties not standing in confidential relationship, and it not being shown that the opinions were not honestly held, or that they were given in bad faith.

APPEAL from a judgment of the Superior Court of Los Angeles County. John M. York, Judge.

The facts are stated in the opinion of the court.

Tanner, Taft & Odell, Tanner, Odell & Taft, and Harold A. Gilman, for Appellants.

Watkins & Blodget, Byron C. Hanna, Joseph Musgrove, Charles W. Lyon, Charles S. McKelvey, Victor T. Watkins, and Fredericks & Hanna, for Respondents.

SHAW, J.—The plaintiffs appeal from a judgment in favor of the defendants rendered upon the granting of the defendants' motion for nonsuit.

The action was to recover damages alleged to have been caused by false representations made by the defendants to the plaintiffs.

The complaint alleges, in substance, that the plaintiffs bought of one C. J. Proud and the defendant, H. A. Land-

wehr, certain bonds of the Bisbee Light & Power Company, of the par value of thirty thousand dollars, and paid for the same by conveying to said Proud a certain lot in Los Angeles and to Landwehr certain other property, all of the value of twenty-five thousand dollars; that to induce plaintiffs to make said exchange the defendants represented to plaintiffs that the bonds were "gilt-edge securities," that the net income of the Power Company was more than double the amount of the bond interest, that the bonds were guaranteed by Deane & Company, of Grand Rapids, Michigan, that said guarantors were a large concern owning and operating plants all over the country, and their securities "gilt edge," that there were only two hundred and ten thousand dollars of the bonds outstanding, and that the bonds were secured by a first mortgage on the property; that each and every of said representations were false and were known by the defendants to be false at the time they were made; that the defendants made said representations in order to induce plaintiffs to exchange their property for said bonds; that plaintiffs at the time did not know that the representations were false but believed them to be true, and that, relying thereon, they made the exchange aforesaid; that the said bonds in fact are worthless. The prayer is for twenty-five thousand dollars as damages for the deceit. The allegations concerning the alleged false representations are denied by the answers of the respective defendants.

The bonds once belonged to the defendants McPherson and Nordholt, who sold and transferred them to Proud in August, 1908, a few weeks prior to the transfer to the plaintiffs. Landwehr had acted as agent for McPherson and Nordholt in their deal with Proud and in making that deal had obtained two letters, one from McPherson and one from H. J. Englebrecht, cashier of the Bank of Santa Monica, to himself, containing statements regarding the bonds. Landwehr acted as agent for Proud in the transaction with Gleason. The plaintiffs are husband and wife. The husband conducted all the negotiations. They sued Proud for a rescission of the contract and failed to recover. (See *Gleason* v. *Proud,* 31 Cal. App. 123, [159 Pac. 885].) This suit for damages involves the same transaction and much of the evidence was a repetition of that given in the action against Proud. In the negotiations between Landwehr and the plaintiffs, Landwehr

showed to Gleason the letters above mentioned. At his suggestion Gleason also inquired of Nordholt and Englebrecht about the bonds of the Power Company and of Mr. McNutt, who showed him a copy of the trust deed given by the Power Company as security for the bonds. He was given an opportunity to read it. These documents and the statements made to them by Landwehr and Nordholt constituted the representations upon which plaintiffs purchased the bonds.

There was no evidence of any representations made by McPherson directly to the plaintiffs. He had no interest in the transaction with Gleason. So far as he is concerned, the only representations made were in the letter aforesaid, which was exhibited to Gleason without the knowledge or consent of McPherson. There was no evidence to show that he was acting in concert with Landwehr in dealing with Gleason, or that he had any knowledge thereof. Obviously the nonsuit was properly granted as to him. The letter of McPherson, written for the previous deal between him and Proud, stated that the bonds were "backed" by Deane & Co., that the power plant was a first-class one, paying net more than double the bond interest and had an output of almost four thousand dollars a month on January 1, 1908, that Deane & Co. was a large concern owning and operating big plants all over the country, and that their securities were "gilt edge." There was no substantial evidence tending to show that either of these statements were false or that the defendants, or either of them, knew them to be false, or did not believe them to be true, or that their information on the subject did not warrant them in making the statements. So far as the charge of fraud is founded on these representations, therefore, the evidence was wholly insufficient.

The letter of Englebrecht contained a statement of the operating figures of the plant for the month of December, 1907. On January 1, 1908, it had been sold to the Bisbee Light & Power Company by another corporation. The statement, the letter said, was for the last month of operation by "the old company." It was to the effect that the net operating profits for that month was $2,382.92. This statement was made by Nordholt and by him was given to Englebrecht prior to the former deal between him and Proud. Nordholt said to Gleason that the figures were correct. Gleason does not contend that they were false and made no attempt to show

their falsity. The statement in the Englebrecht letter was that this net operating profit was considerably "more than double the bonded interest on the two hundred and ten thousand dollars outstanding bonds." At five per cent the annual interest on that sum would be ten thousand five hundred dollars. The monthly net profit of $2,382.92 would be $28,594 a year. The statement was therefore absolutely true. The charge, as to these particulars, wholly failed.

There were one hundred and thirty thousand dollars of the bonds of the Power Company issued and sold. Other of said bonds, to the amount of eighty thousand dollars, were deposited with the Los Angeles Trust & Savings Bank to be exchanged for a like amount of bonds of the former corporate owner then outstanding; fifteen thousand dollars thereof had been so exchanged. No other bonds had been issued by the new company. The statement that the Bisbee Light & Power Company had issued only two hundred and ten thousand dollars of its bonds was therefore true.

There was no proof that either of the defendants ever represented to Gleason that the two hundred and ten thousand dollar bond issue were first mortgage bonds. Hence the charge of fraud, so far as it is based on the allegation that they so stated, is without support. No inquiry on that point was made by Gleason. The fact that there was a prior bond issue of eighty thousand dollars, and the deposit to exchange them above mentioned, was set forth in the trust deed which McNutt showed to Gleason, but he did not read that part of it. He cannot charge the defendants with this neglect. They did nothing to prevent him from reading it through.

The statements of Landwehr and Nordholt to the effect that money invested in the bonds would be safe, that the bonds were "gilt-edge security," that they would command a ready sale, that they were a good investment and that the interest and principal would be duly paid, were all statements of their respective opinions, and they were avowedly based on the aforesaid statement for December, 1907, and the two letters of McPherson and Englebrecht, both of which were shown to Gleason as the foundation thereof. Landwehr expressly stated to Gleason that he had investigated all the available sources of information about the bonds and that the two letters had been the result of his investigation.

He did not profess to have other means of knowledge. Mere expressions of opinion of this character by a seller to a buyer, dealing at arm's-length, do not constitute fraud where the information on which they are founded is disclosed to the buyer with the statement of the opinion. The plaintiffs had no right to rely on such opinions. They did not stand in confidential relations to the defendants. The evidence does not even tend to show that the opinions were not honestly held, or that they were given in bad faith. (*Craig* v. *Wade,* 159 Cal. 173, [112 Pac. 891] ; *Lee* v. *McClelland,* 120 Cal. 149, [52 Pac. 300] ; *Choate* v. *Hyde,* 129 Cal. 580, [62 Pac. 118] ; *Rendell* v. *Scott,* 70 Cal. 514, [11 Pac. 779].) The court properly granted the motion for nonsuit.

It is claimed that the court erred in some of its rulings regarding the admission and exclusion of evidence. We find none of them of sufficient merit to deserve attention. A perusal of the evidence shows that if the plaintiffs have suffered loss by reason of the transaction complained of, it is not due to any deceit practiced upon them by the defendants, but to their failure to make due investigation before making the exchange.

The judgment is affirmed.

Sloss, J., and Lawlor, J., concurred.