[Civ. No. 4052. Second Appellate District, Division Two.—July 30, 1923.]

ALICE G. WOLLESON, Respondent, v. J. M. COBURN, Appellant.

[1] SPECIFIC PERFORMANCE — EXCHANGE OF PROPERTIES—SHORTAGE—NOTICE—EVIDENCE—FINDINGS.—In this action for the specific performance of a contract for the exchange of lands, notwithstanding there was no direct contradiction of defendant's testimony that he did not discover the true area of one of the parcels of land to be conveyed to him until the spring of a specified year, there were circumstances, particularly the fact that during the previous year he was furnished with an abstract of title showing the shortage, which warranted the trial court in disbelieving defendant's testimony and in finding that during the previous year and prior to the time he entered into a supplementary agreement in connection with the transaction defendant knew that the parcel in question, and which was referred to as containing a given acreage, contained a lesser acreage.

[2] ID.—WAIVER OF SHORTAGE.—Having chosen, without objection, voluntarily to enter into the new or supplementary agreement of exchange, after his discovery of the true area of the parcel referred to as containing a given acreage, defendant must be held to have waived the right to claim there was a shortage.

[3] ID.—PRESENCE OF WATER—EXPRESSION OF OPINION.—The statement that "in the winter months when there is rain there will be plenty of water for the stock" is but an unfulfilled prediction or an erroneous conjecture as to a future event—a mere expression of opinion—and is not to be considered as a representation of fact.

[4] ID.—ABSENCE OF TITLE — NOTICE—MUTUALITY OF CONTRACT.—A contract for the exchange of real properties is not lacking in mutuality merely because at the time of entering into the agreement all the title to one of the properties agreed to be transferred is not vested in the party agreeing to transfer same, and that fact is known to the other party; but in such case it is sufficient if full title is obtained before the time for performance is due.

[5] ID.—ADEQUACY OF CONSIDERATION—MONETARY VALUE—PLEADING. In this action to compel specific performance of a contract for the exchange of lands, the complaint alleging that the property agreed to be conveyed by plaintiff equaled in amount the value of the money and properties which defendant agreed to convey, together with the other averments as to reasonableness, was sufficient to show that the contract was just and reasonable and that the consideration was adequate; and it was not necessary for plaintiff to allege the monetary value of the property she agreed to give in the exchange.

[6] ID.—OWNERSHIP OF LAND—WIFE NOT PARTY—JUDGMENT.—In his offer to exchange defendant having declared himself to be the owner of the lands he agreed to convey, and he alone having signed the agreement of exchange, his wife not having joined with him in the execution of that instrument, and throughout all the pleadings he having been treated as the sole owner of all the properties which he had agreed to give in exchange for the property of plaintiff, it does not lie in his mouth to ask for a reversal of the decree of specific performance simply because, at the trial, his wife claimed to be a joint owner with him of one of the lots and she was not made a party to the action.

[7] ID.—RENTAL VALUE OF PROPERTY—EVIDENCE—DAMAGES.—The real estate agent who had carried on the negotiations for the exchange of the several properties and who, presumably, qualified as an expert on the rental value of properties in the vicinity, having testified that, as to one of the properties agreed to be transferred by defendant, the reasonable rental value thereof, unfurnished, was a certain specified sum per month, the trial court was justified in using that rental value as the basis for determining the amount of damages plaintiff should recover from defendant, because of the latter's breach of his agreement to convey, notwithstanding such real estate agent, on his cross-examination, employed language which might have warranted the conclusion that he based his opinion upon what defendant had told him the property had rented for furnished.

---

4. Enforceability of contract for sale of land where vendor has only partial interest, note, 10 Ann. Cas. 562.

When vendor in suit for specific performance may be allowed to perfect title, note, Ann. Cas. 1912A, 323.

APPEAL from a judgment of the Superior Court of Los Angeles County. Leslie R. Hewitt, Judge. Affirmed.

The facts are stated in the opinion of the court.

Geo. F. Kapp for Appellant.

Clock, McWhinney & Clock for Respondent.

FINLAYSON, P. J.—This is an appeal by defendant from a judgment in favor of plaintiff in an action for the specific performance of a contract for the exchange of lands. Defendant also appeals from the order denying his motion for a new trial, but as that is not an appealable order the attempted appeal therefrom must be dismissed.

The facts necessary to an understanding of the points presented for decision are these: On August 6, 1919, defendant made a written offer to pay $2,000 and to exchange his properties for land described in the offer as "440 acres located about 7 miles west of Coulterville." The last-mentioned property is referred to in at least one of the exhibits as the "Wolleson Ranch." Defendant's offer recites that he is the owner of the properties which he is to give in exchange. They are particularly described in the offer. They consisted of a house and lot at Long Beach, a house and lot in Redlands, and two lots in Palm Springs. The offer states that defendant desires to exchange his properties, paying in addition thereto the $2,000 in cash, for a piece of property "owned by Mrs. A. G. Wolleson [plaintiff] of Coulterville, Calif., and particularly described as follows, to wit: situate in or near the city of Coulterville, County of Mariposa, State of California, being 440 acres located about 7 miles west of Coulterville, Calif., together with all the stock & farm implements, also household goods, all clear of encumbrance," the exchange to be negotiated by one Fred B. Palmer, a real estate agent whose office is at Long Beach.

The Wolleson ranch consists of two or more contiguous parcels of land the patents to which were issued to the patentees at different times. One of these parcels consisted originally of 120 acres, namely, the N. ½ of the N. W. ¼ and the N. W. ¼ of the N. E. ¼ of section 35, township 2 south, range 15 east, M. D. M., patented to Helen S. Wolle-

son on September 3, 1908, and by her conveyed, on June 29, 1909, to Peter Wolleson, plaintiff's deceased husband. Peter Wolleson, on September 8, 1910, conveyed to one G. J. Wren 10 acres out of this parcel of 120 acres, and ever since then the Wolleson ranch has consisted of 430 acres and not 440 acres.

On August 13, 1919, plaintiff executed a written acceptance of defendant's offer wherein she stated that she is the owner of the piece of property described in defendant's offer as the 440 acres located about seven miles west of Coulterville, and agreed to furnish a certificate of title or abstract from a competent searcher of records "showing property vested as deeded," and to furnish a good and sufficient deed of conveyance.

On the day when plaintiff accepted defendant's offer, August 13, 1919, plaintiff and defendant and the latter's wife signed certain escrow instructions to the Exchange National Bank of Long Beach. In these instructions the bank is directed to carry out the conditions of the agreement "wherein Mrs. A. G. Wolleson, a widow, agrees to sell and J. M. Coburn agrees to purchase the property described as follows: 440 acres, as per Deed description, herewith taken in exchange" for the $2,000 in cash and the Long Beach, Redlands and Palm Springs properties described in plaintiff's offer of August 6, 1919.

Deeds were executed by the respective parties and were deposited with the bank as escrow-holder. The deed which Mrs. Wolleson executed as grantor and which was deposited by her with the bank to hold in escrow bears date August 15, 1919, and describes the property as follows: "The Wolleson Ranch situated about seven miles west of Coulterville, Mariposa County, State of California, containing four hundred forty (440) acres, more or less, being portions of Section Two (2), Township 3, Range 15 East, also portions of Sections Thirty-five (35), Thirty-six (36), Township Two, Range 15 East."

The abstract of title which plaintiff caused to be made and which was delivered to defendant for his inspection, showed that the part of the ranch which is referred to as "the 120 acres" in the supplementary escrow instructions presently to be set forth stood of record in the name of plaintiff's deceased husband, Peter Wolleson. In order to

perfect plaintiff's title to this part of the ranch it was necessary that administration of her deceased husband's estate should be had and that she should procure deeds from the other heirs. This she did some time prior to June 30, 1920.

On November 7, 1919, plaintiff and defendant executed and delivered to the escrow-holder supplementary escrow instructions reading as follows:

"11–7–1919.

"Referring to these escrow instructions, we would amend same as follows: Mrs. Wolleson shall deposit in escrow a deed in favor of J. M. Coburn, covering all of the Mariposa Co. property which she is to convey excepting 120 acres, on account of the title being in probate and deed shall be made covering said portion as soon as clear title can be given. Also, Mr. Coburn is to get possession of said ranch property at this time, and pay $1500 cash, instead of $2000 as in the original instructions; same to be delivered to Mr. Coburn at this time. Also, Coburn delivers at this time title to the Redlands and Palm Springs property, free of encumbrance, and Coburn to hold title to the Long Beach property until title to the 120 acres of Mariposa Co. can be delivered free of encumbrance. Title to be acceptable to Mr. Coburn. Taxes for 1919–1920 to be paid by present owners."

The abstract of title which plaintiff caused to be made, and which was delivered to defendant some time prior to the supplementary escrow instructions of November 7, 1919, showed that Peter Wolleson, during his lifetime, had conveyed to G. J. Wren the above-mentioned 10 acres, i. e., the 10 acres which originally formed a part of the parcel referred to in the amended instructions as "the 120 acres," and that, therefore, of the 120 acres originally patented to Helen S. Wolleson, Peter Wolleson's estate owned but 110 acres.

In his answer defendant set up by way of affirmative defenses: (1) That plaintiff falsely and fraudulently represented to him that 120 acres was the area of the parcel which the supplementary escrow instructions referred to as "the 120 acres," whereas it really contained but 110 acres; and (2) that plaintiff falsely and fraudulently represented to him "that springs of water would begin to

flow and continue flowing for about eight months in each year on said 120 acre tract as soon as the fall rains came."

The trial court found in favor of plaintiff and against defendant on all the issues tendered by the pleadings, and gave judgment for plaintiff accordingly.

The finding with respect to the alleged false representation regarding the area of the parcel which the parties referred to as "the 120 acres" was as follows: "That the tract of land referred to as the 'one hundred and twenty (120) acre tract' described in the supplemental agreement, in fact contained one hundred and ten (110) acres of land, constituting the following described premises: NW¼ of NE¼ Sec. 35—and all of the N½ of NW¼ Sec. 35, T. 2 S., R. 15 E., except that portion lying South of the County Road known as the LaGrange and Coulterville Road. This land was pointed out to the defendant, J. M. Coburn, by Herbert Wolleson, the son of the plaintiff, Alice G. Wolleson, and referred to as a 'one hundred and twenty (120) acre tract of land'; that the abstract of title submitted to defendant prior to the execution of the supplemental agreement of November 7th, 1919, showed the tract of land to contain but one hundred and ten (110) acres, and that thereafter the parties to the transaction in dealing with this tract of land did so knowing that it contained but one hundred and ten (110) acres of land, but it was referred to generally in their transactions as the 'one hundred and twenty (120) acre tract'; that the defendant knew at the time of the supplemental agreement of November 7th, 1919, when Five Hundred Dollars ($500.00) was reduced from the cash payment to the plaintiff, that the tract contained but one hundred and ten (110) acres. The additional ten (10) acres, to wit: That portion of said N½ of the NW¼ of Sec. 35, T. 2 S., R. 15 E., lying South of the County Road known as the LaGrange and Coulterville Road, necessary to constitute the full one hundred and twenty (120) acre tract of land, was not material to the defendant's possession and enjoyment of said property, and the defendant had knowledge of the actual acreage at the time of entering into the supplemental agreement of November 7th, 1919."

[1] Appellant contends that the evidence is insufficient to support the finding that when the parties entered into

the supplementary agreement of November 7, 1919, defendant knew that the parcel referred to therein as "the 120 acres" contained but 110 acres. This contention is based upon appellant's testimony to the effect that it was not until the spring of 1920 that he noticed that the abstract of title showed a shortage of ten acres. While there was no *direct* contradiction of appellant's testimony that he did not discover the true area until the spring of 1920, there were circumstances which warranted the trial court in disbelieving it. It is conceded that appellant had possession of the abstract some time prior to the supplementary agreement of November 7, 1919, and that he had an opportunity to examine its contents. He testified that he looked at the abstract in February or March of 1920, and, as he expressed it, "figured it out that there were 10 acres short there." This testimony shows that an examination of the abstract was alone sufficient to apprise appellant of the fact that Peter Wolleson had conveyed the ten acres and that his heirs, including respondent, had no title thereto. Having had the abstract in his possession before he executed the supplemental escrow instructions of November 7, 1919, the trial court was warranted in inferring that appellant was aware of the shortage prior to the execution of those instructions, notwithstanding his testimony that it was not until the spring of 1920 that he made the discovery. "While it is the general rule that the uncontradicted testimony of a witness to a particular fact may not be disregarded, but should be accepted by the court as proof of the fact, this rule has its exceptions. The most positive testimony of a witness may be contradicted by inherent improbabilities as to its accuracy contained in the witness' own statement of the transaction; or there may be circumstances in evidence in connection with the mattter which satisfy the court of its falsity; the manner of the witness in testifying may impress the court with a doubt as to the accuracy of his statement and influence it to disregard his positive testimony as to a particular fact; and as it is within the province of the trial court to determine what credit and weight shall be given to the testimony of any witness, this court cannot control its finding or conclusion denying the testimony credence, unless it appears that there are no matters or circumstances which at all impair its ac-

curacy.'' (*Davis* v. *Judson*, 159 Cal. 128 [113 Pac. 150].)
Appellant knew that he had been furnished with the abstract in order that he might satisfy himself respecting the nature of respondent's asserted title to the land which she had agreed to convey. The court, therefore, was justified in inferring that it was inherently improbable that appellant neglected to make a searching examination of the abstract as soon as it came into his possession. We cannot disturb the court's finding.

[2] Having chosen, without objection, voluntarily to enter into the new agreement of November 7, 1919, after his discovery of the true area of the parcel referred to as "the 120 acres," appellant must be held to have waived the right to claim there was a shortage. (*Lee* v. *McClelland*, 120 Cal. 147, 151 [52 Pac. 300].)

With respect to the defense that plaintiff falsely represented that springs flowed upon the land, the trial court found as follows: "That it is not true that the plaintiff, acting through her son, represented to the defendant that springs of water would begin to flow, or would continue to flow for a period of eight (8) months in each year, on the one hundred and ten (110) acre tract, but that it was represented to the defendant that springs had risen on said land 'practically' every year for a long period of years prior to the year 1919 and that it was the opinion stated by Herbert Wolleson, son of the plaintiff, that they would continue to do so in the future when the rains fell in that vicinity, and that no fraud nor deceit was intended or accomplished by said statement of opinion."

So far as the representation refers to a past fact, namely, that there were springs which held water during the winter months when it rained, there was ample testimony to support the court's finding that no deceit was practiced. Respondent's son testified unequivocally that there were two springs on this tract of land; that he had lived on the ranch nine years and that there never was a winter during those nine years when water did not flow from the springs. He testified: "I never knew it that those springs didn't have water in—in the winter months. . . . We generally had to have a good rain before the water would come there, and after that we always had plenty of water. . . . Q. Well, it required, usually, a good rainfall to start this water flowing?

A. Yes, it required a good rain.  Q. And how long would the water flow?  A. Well, there would be water there— some years I have known it up into the last of May or the first of June.  It just depended upon the winter months— the rain that we had in the winter months. . . .  Q. Did you ever know a season when there was not water in the springs for that purpose [the watering of the stock]?  A. No, I never did.  There has always been water whenever I have been on the place."  This witness further testified that in the winter months there always had been enough water in the springs to water the twenty-five or thirty head of stock which he pastured on the parcel referred to by the parties as "the 120 acres."

[3]  That part of the representation which refers to the future—that wherein respondent's son told appellant that "in the winter months when there is rain there will be plenty of water for the stock"—was but an unfulfilled prediction or an erroneous conjecture as to a future event. "Mere expressions of opinion and predictions are not generally considered as representations of fact.  Consequently they are not fraudulent and are insufficient for the purpose of maintaining an action of deceit or for the purpose of rescinding a contract."  (1 Elliott on Contracts, p. 137.  See, also, *Rendell* v. *Scott*, 70 Cal. 514 [11 Pac. 779]; *Nounnan* v. *Sutter County L. Co.*, 81 Cal. 1, 6 [6 L. R. A. 219, 22 Pac. 515]; *Holton* v. *Noble*, 83 Cal. 7 [23 Pac. 58]; *Lee* v. *McClelland, supra; Henry* v. *Continental Bldg. etc. Assn.*, 156 Cal. 667 [105 Pac. 960]; *Ayers* v. *Southern Pacific R. R. Co.*, 173 Cal. 74, 79 [L. R. A. 1917F, 949, 159 Pac. 144]; *Bickel* v. *Munger*, 20 Cal. App. 633, 637 [129 Pac. 958]; *Clark* v. *Ralls*, 50 Iowa, 275, and 26 C. J. 1087.)  In *Clark* v. *Ralls, supra*, the supreme court of Iowa held that a statement by a vendor in the sale of a mill and water-power that "the stream would furnish water to run the mill day and night eight months in the year" was not an actionable representation, and that if it was untrue it would not entitle the vendee to damages as for a false and fraudulent representation.

[4]  Because all of the title to the 110 acres was not in respondent until after the administration of her deceased husband's estate and the execution to her of deeds by her coheirs, that is, because all of the title to the 110 acres was not in respondent at the time when she and appellant

entered into their contract for the exchange of properties, it is argued that the contract lacked the necessary element of mutuality. To support his position appellant relies upon the doctrine of mutuality as enunciated in *Norris* v. *Fox*, 45 Fed. 406, where it was held that if at the time when the contract was executed it is not specifically enforceable against one of the parties, he cannot, by subsequent performance of those conditions which he could not then perform, put himself in a position to demand specific enforcement against the other party.

That mutuality of remedy must exist from the time the contract was entered into—the rule announced in *Norris* v. *Fox*—is open to so many exceptions that, as Professor Pomeroy says "it is of little value as a rule." (5 Pomeroy's Equity Jurisprudence, sec. 2191.) It further is said by that author in a note to section 2191 (vol. 5, p. 4925) that "the rule in its older formulation—that mutuality of remedy must exist from the time the contract was entered into— has been *entirely* devoured by the generally admitted exceptions, as will appear from the sections following." A generally recognized exception to the rule is that if the purchaser knows that his vendor has no title when the contract to convey is made but expects to procure it in time to enable him to carry out his agreement, the buyer cannot avoid specific performance on that account if his vendor becomes vested with the title before time for performance has matured. (*Olson & Nessa* v. *Rogness*, 173 Iowa, 331 [155 N. W. 301].) Indeed, many leading authorities go to the extent of saying that if the vendor obtains the title which he promised to convey at any time before the decree is entered or before the time for performance is due, the vendee may be compelled to specifically perform his part of the contract. (5 Pomeroy's Equity Jurisprudence, secs. 2194, 2230; *Wolff* v. *Cloyne*, 156 Cal. 746 [106 Pac. 104]; *Dore* v. *Southern Pac. Co.*, 163 Cal. 182, 195 [124 Pac. 817].) Here appellant, when he entered into the supplementary agreement of November 7, 1919, knew that at that date the title to the 110 acres stood of record in the name of Peter Wolleson, deceased, and that before respondent could perfect title in herself and convey a good title administration of her deceased spouse's estate would be necessary, and also that it would be necessary for her to procure

deeds from her coheirs. All of this respondent did, relying on appellant's contract, as amended by the supplementary escrow instructions; and she did all of this in order that she might be able to perform her part of the agreement. The case is thus clearly brought within the exception recognized by the Iowa supreme court in *Olson & Nessa* v. *Rogness, supra.*

[5] Appellant argues against the sufficiency of the complaint because the paragraph which is designed to show that the contract of exchange was fair and the consideration adequate does not aver the monetary value of the property which plaintiff agreed to give in the exchange—citing *Salisbury* v. *Yawger,* 184 Cal. 783 [195 Pac. 682]. In that case the vendor had agreed to *sell* his land, i. e., he had agreed to convey for a monetary consideration. The case cited is not applicable here. In the present case the complaint alleges that the property agreed to be conveyed by respondent equals in amount the value of the money and properties which appellant agreed to convey. This allegation, with the other averments as to reasonableness—the contract being one for the exchange of properties—is sufficient to show that the contract was just and reasonable and that the consideration was adequate.

[6] It is claimed that appellant's wife should have been made a party defendant because she signed, with her husband, the original escrow instructions and testified that she was a joint owner with her husband of the Long Beach lot. Though she signed the original escrow instructions—unnecessarily, as we think—appellant's wife was not a party to the contract to exchange properties. She did not agree to sell or purchase any property, nor did she agree to exchange any property. If she owned the Long Beach property jointly with her husband, as she claimed she did, that fact would not prevent respondent from electing to exchange the Wolleson ranch for such title as appellant might have to the properties which he had agreed to give in exchange. In his offer to exchange properties appellant declared himself to be the owner of all the lands which he offered to give in exchange, including the Long Beach property. He declared that his title was "clear of encumbrance." Throughout all of the pleadings he is treated as the sole owner of all the properties which he had agreed

to give in exchange for the Wolleson ranch. It does not lie in his mouth to ask for a reversal of the decree simply because his wife, at the trial, claimed to be a joint owner with him of a lot of which he had represented himself to be the sole owner and which he had agreed to convey, with his other properties, in exchange for respondent's ranch.

[7] The decree adjudges that plaintiff recover of defendant the sum of $600. This amount the trial court found to be the reasonable rental value of the Long Beach property at the rate of $50 per month from the time when possession should have been delivered to plaintiff. This judgment for an amount which the court found to be the reasonable rental value of the premises was given pursuant to the rule that a vendor who wrongfully retains possession after the time appointed for delivery is chargeable with the fair rental value of the property. It is claimed that the evidence is insufficient to support the finding that $50 per month was the fair rental value of the Long Beach property. That property was to be conveyed to respondent unfurnished. Appellant testified that he had rented the property furnished for $50 a month, and that unfurnished its rental value was but $35 a month. A witness for respondent, Fred Palmer, the real estate agent who had carried on the negotiations for the exchange of properties, who had an office at Long Beach and who was, presumably, qualified as an expert on the rental values of the properties in that vicinity, testified that in his opinion the rental value of the Long Beach property was $50 per month. It is true that this witness, on his cross-examination, testified that appellant had told him that the property had rented for $50 per month and that he did not know whether appellant had rented it furnished or unfurnished. It also is true that this witness, on his cross-examination, employed language which might have warranted the conclusion that he based his opinion of the rental value of the premises solely upon what appellant had told him the property had rented for. But we cannot say that this was the only reasonable construction which could be put upon the testimony of the witness. Because it was not the only construction of which it was reasonably susceptible the trial court was justified in adopting the view that the witness, irrespective of anything which appellant might have said to him, was of the opinion

that the Long Beach property, unfurnished, had a fair rental value of $50 per month. We conclude, therefore, that the finding that $50 per month was the fair rental value is sufficiently supported by the evidence.

The judgment is affirmed and the appeal from the order denying defendant's motion for a new trial is dismissed.

Works, J., and Craig, J., concurred.