[L. A. No. 3758.  Department One.—July 15, 1916.]

## CHARLOTTE E. AYERS et al., Respondents, v. SOUTHERN PACIFIC RAILROAD COMPANY et al., Appellants.

CONTRACTS—SALE OF TOWN LOTS—FAILURE TO PREVENT SALE OF LIQUOR IN TOWN—ACTION FOR DAMAGES.—Where a corporation owning a tract of land laid it off into blocks, lots, and streets, called it a town, adopted and made public "a general scheme or plan" that no alcoholic liquors "should ever be sold or kept for sale or given away upon any of the lands" situated in said town, and that no part thereof should be sold or conveyed, except upon a covenant and

condition inserted in the agreement or deed, as a part of its consideration, by the purchaser, his heirs, successors, or assigns, that no alcoholic liquors should ever be sold, kept for sale, or given away thereon, and that a breach of the condition should work a forfeiture and a reverter to said company, which general scheme or plan was carried out and every deed and agreement of sale of every lot or parcel of land sold in said town contained the covenant and condition subsequent, an action for damages does not lie against the corporation in favor of a purchaser, on the ground that her hotel business on the lot purchased, and the property itself, has been damaged, by the fact that saloons and restaurants were established in said town on other lots so sold and conveyed by deeds containing said covenants and conditions, the sale of liquor in said restaurants and saloons resulting in a loss of patronage to plaintiff in her hotel dining-room and in depreciating the value of her property.

ID.—REPRESENTATION AS TO FUTURE—UNFULFILLED PROMISE—WHEN NOT FRAUDULENT — PLEADING. — Representations claimed to have been made by the seller that it was its general plan that no intoxicating liquors should be sold in the town and that a covenant to that effect should be inserted in each deed and agreement, amounts to nothing as a basis for an action for damages, not being false representations, the things having occurred as represented; and a representation as to the future, that no intoxicating liquor would ever be sold or given away in said town, even if regarded as an unfulfilled promise, or one of which performance was refused, does not constitute fraud unless it was made without any intention of performing it, or with the intent to deceive or defraud plaintiff, or to induce her to buy the property; and, if so made, allegations to that effect were necessary in pleading the false representations as fraud.

ID.—INSUFFICIENT COMPLAINT—LACK OF WARRANTY.—An allegation that the defendant made the statement "that no intoxicating liquor would ever be sold or given away" in the town literally means only that the defendant stated it as a fact that would occur, or as a matter of opinion or prophecy. Such a statement does not constitute a binding contract or warranty that the future should be according to the prophecy, or a basis for an action.

ID.—AGENCY—AUTHORITY OF AGENT—UNAUTHORIZED REPRESENTATIONS OF AGENT—EVIDENCE.—Where the appointment of an agent to sell property was in writing, and merely authorized him "to make earnest and active effort to effect the sale of such lots at the prices and upon the terms, and subject to such agreements and conditions and restrictions as the railroad company may instruct," the method of sale adopted being that each person desiring to purchase a lot should sign a written application to the company to become such purchaser, the application being forwarded to the general office of the company for approval, and, if approved, returned to the agent, the agreement for the sale being prepared and signed by the company

for the purchaser, and providing that upon payment of the price the company would execute a deed to the purchaser, the form of applications for purchase being prepared and printed by the company and furnished to the agent, the agent had no authority to bind the company by a representation during the plaintiff's negotiations for the sale that there never would be any liquor sold or allowed to be sold by anybody in the town, and where neither the agreement nor the deed contained any stipulation on the part of the company that it would prevent the sale of intoxicating liquors forever or at all in the town, it was error to admit such declarations of the agent in evidence over the objection of defendants.

ID.—EVIDENCE—WRITTEN AGREEMENT—WHEN PAROL EVIDENCE INADMISSIBLE—SECTION 1856, CODE OF CIVIL PROCEDURE.—Under section 1856 of the Code of Civil Procedure, when the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all the terms, and, therefore, between the parties no evidence of the terms of the agreement other than the contents of the writing can be given, except that parol evidence is admissible for some purposes where a mistake or an imperfection in the writing is in issue, or its validity is in dispute, or where it is necessary to explain an extrinsic ambiguity, or to establish illegality or fraud.

ID. — WRITTEN CONTRACT — PAROL EVIDENCE — WHEN ADMISSIBLE.—To justify the admission of parol evidence of a contract between parties who have made an agreement in writing, on the ground that it is collateral, it must be upon a subject distinct from that to which the writing relates.

ID. — SUBJECT COVERED BY WRITTEN AGREEMENT — PAROL EVIDENCE — INADMISSIBILITY OF.—As an agreement in such a case that sales of liquor should never take place in said town would be essentially a warranty regarding the permanent advantages of the property sold, such warranty, if made, would be a part of the contract of sale and not collateral thereto, and to add such oral stipulation and the agreement that the company should see that no liquor was ever sold in the town would be to add by parol to a written agreement which on its face purports to be complete on that subject, and which, under section 1856 of the Code of Civil Procedure, is presumed to contain all the terms agreed upon, and evidence of such oral agreement is inadmissible.

APPEAL from a judgment of the Superior Court of Kern County, from an order denying a new trial, and from an order denying defendants' motion for a judgment on the findings. Paul W. Bennett, and Howard A. Peairs, Judges.

The facts are stated in the opinion of the court.

Frank McGowan, Frank Thunen, William M. Singer, and William Singer, Jr., for Appellants.

Street & Street, and Charles Del Bondio, for Respondents.

SHAW, J.—Three appeals by the defendants are presented by the record, one from the judgment, a second from an order denying a new trial, the third from an order denying defendants' motion for a judgment on the findings. The judgment is against the Southern Pacific Railroad Company alone.

The complaint purports to state a cause of action for damages to plaintiffs' business and property, arising from the failure of the defendants to prevent the keeping of saloons and the sale of liquors in the town wherein the property of plaintiffs was situated. We will now state the allegations of fact upon which the claim is predicated.

The defendant, Southern Pacific Railroad Company, being the owner of a tract of land in Kern County, laid it off into blocks, lots, and streets, called it the town of Moron, and filed a map thereof in the office of the county recorder on July 1, 1909. It then adopted and made public "a general scheme or plan" that no alcoholic liquors "should ever be sold or kept for sale or given away upon any of the lands" situated within said town, and that no part thereof should be sold or conveyed, except upon a covenant and condition inserted in the agreement or deed, as a part of its consideration, by the purchaser, his heirs, successors, or assigns, that no alcoholic liquors should ever be sold, kept for sale, or given away thereon, and that a breach of the condition should work a forfeiture and a reverter to said company. This general scheme or plan was carried out, and every deed and agreement of sale of every lot or parcel of land sold within said town contained the covenant and condition subsequent above stated. Said company, through its agents, engaged in the sale of said lots, "represented and stated to plaintiffs that it was the general scheme and plan of the defendants in laying out and platting said town of Moron that no intoxicating liquor should ever be sold or given away therein, *and that no intoxicating liquor would ever be sold or given away therein*" and that a covenant would be inserted in every deed and agreement of sale, as above stated. The plaintiff, Charlotte E. Ayers, is the real party in interest, C. W. Ayers being joined as plain-

tiff solely because he is her husband. Believing said representations and relying thereon, she bought seven lots in Moron. Believing that said liquor covenant was binding upon every purchaser of a lot "and that defendants would enforce said covenants and not permit any purchaser or owner of any lot within said town of Moron to sell or give away any intoxicating liquors therein and relying on said representations and statements of defendants," she erected a hotel on her said lots, furnished it, and on June 16, 1910, engaged in the hotel business therein, and has ever since continued in said business.

In January and February, 1911, several saloons and a restaurant were established in said town by divers persons on lots sold by said company by deed containing the aforesaid covenants and conditions, and the business of selling intoxicating liquors has ever since been carried on in said saloons, in violation of said covenants and conditions, and with the "full knowledge, consent, and permission of said defendants." The said restaurant has been and is conducted as a place where intoxicating liquors are sold, and it has caused a loss of patronage to said plaintiff in her hotel dining-room, to her damage in the sum of five thousand dollars. The saloons have caused people to leave plaintiff's hotel and patronize the saloons and restaurant aforesaid. By reason of said withdrawal of patronage from plaintiff's hotel she is unable to sell her property, and by reason of the keeping of said saloons plaintiff's property has depreciated in value to her damage in the sum of twenty-five thousand dollars.

Defendants, though often requested by plaintiff so to do, have failed and refused to prohibit, stop, prevent, and enjoin said persons from selling intoxicating liquors in said town of Moron.

The court below found these allegations to be true in the main, and assessed the plaintiff's damage from loss of patronage in her hotel at five thousand dollars, and from depreciation in the value of her property at fifteen thousand dollars. The judgment was for twenty thousand dollars.

The charge that the defendant represented to plaintiff that it was its general plan that no intoxicating liquors should be sold in Moron, and that the covenant to that effect should be inserted in each deed and agreement, amounts to nothing as

a basis for the action, for these were not false representations. The things occurred in accordance with the representations.

The only other representation was in regard to the future, that is, "that no intoxicating liquor would ever be sold or given away" in said town. Even if this be regarded as a promise, rather than a prediction, and a promise which was not fulfilled, or of which performance was refused, it does not amount to fraud. The making of a promise does not constitute fraud unless it is made without any intention of performing it. (Civ. Code, sec. 1572, subd. 4.) "The mere failure to perform the covenant does not relate back to and render the same fraudulent." (*Lawrence* v. *Gayetty,* 78 Cal. 126, 131, [12 Am. St. Rep. 29, 20 Pac. 384].) It is not alleged that the so-called promise was made without any intention of performing it, nor even that it was made with intent to deceive or defraud the plaintiff, or to induce her to buy the property. Such allegations are necessary in pleading false representations as fraud. (*Heller* v. *Dyerville Mfg. Co.,* 116 Cal. 127, 133, [47 Pac. 1016].) The complaint cannot be sustained on the ground that it states a cause of action for damages produced by fraud or deceit. (*Feeny* v. *Howard,* 79 Cal. 528, [12 Am. St. Rep. 162, 4 L. R. A. 826, 21 Pac. 984]; *Woodroof* v. *Howes,* 88 Cal. 184, 190, [26 Pac. 111].)

The complaint does not allege that the statement "that no intoxicating liquor would ever be sold or given away" in the town of Moron was made as a promise or agreement. Literally, the allegation means only that the defendant merely stated it as a fact that would occur, or as a matter of opinion and prophecy. In neither case would such a statement constitute a binding contract or warranty that the future should be according to the prophecy, or a basis for an action. (*Rendell* v. *Scott,* 70 Cal. 514, [11 Pac. 779]; *Holton* v. *Noble,* 83 Cal. 7, [23 Pac. 58]; *Nounnan* v. *Sutter Co. L. Co.,* 81 Cal. 6, [6 L. R. A. 219, 22 Pac. 515].)

Conceding, however, that it may be taken as an allegation that the Southern Pacific Railroad Company thereupon entered into an undertaking or contract that no intoxicating liquor would ever be sold or given away in said town, we are met with the objection that there was no legal evidence to support the allegation. The only evidence offered consisted of declarations made by the agent of the railroad company to the plaintiffs at the time of making the sale to Mrs. Ayers of

two of the lots. One S. C. Birchard was appointed by the
Southern Pacific Railroad Company, as its agent, to effect the
sale of the lots in Moron. His appointment was in writing.
It authorized him to "make earnest and active effort to effect
the sale of such lots at the prices and upon the terms, and
subject to such agreements and conditions and restrictions
as the railroad company may instruct." The method of sale
adopted was that each person desiring to purchase a lot should
sign a written application to the railroad company to become
such purchaser, the application would then be forwarded to
the general office of the railroad company at San Francisco
for approval, and, if approved, would be returned to Birchard.
An agreement for the sale would then be prepared and signed
by the railroad company and the purchaser, providing that
upon payment of the price the railroad company would exe-
cute a deed to said purchaser. The forms of applications for
purchase were prepared and printed by the railroad company
and were by it furnished to Birchard. The purchase by the
plaintiff, Charlotte E. Ayers, of lots in Moron was made in
this way. The application signed by the plaintiff was not
introduced in evidence, and its contents do not appear in the
record. There is no evidence that the undertaking alleged
was contained therein, as, indeed, it could not be, since it was
signed only by the purchaser. The agreement signed by both
parties declared that, as a part of the consideration of the
sale, it was made subject to the condition that no intoxicating
liquor "shall ever be sold or kept for sale or given away upon
said premises," upon the penalty of forfeiture and reversion
of title to the company, in case of a breach thereof, and that
said condition and covenant should be written into the deed
and should run with the land. These provisions were also
inserted in the deed executed by the railroad company to the
plaintiff in pursuance of said sale. Neither the agreement
nor the deed contained any stipulation or undertaking on the
part of the railroad company that it would undertake to pre-
vent the sale of intoxicating liquors, forever, or at all, in the
town of Moron. C. W. Ayers testified that Birchard, during
the negotiations attending the sale, said "that there never
would be any liquor sold in the town of Moron; that it was
intended and purposed to be a dry town, that no liquor would
be allowed to be sold under any circumstances by anybody."
This statement is the only evidence of the undertaking relied

on. It was admitted over the objection of the defendants that Birchard had no authority to enter into such an agreement on behalf of the railroad company, and that it was incompetent to vary an agreement in writing by evidence of such declarations. That it was inadmissible over these objections is clear. It comes within the rule of section 1856 of the Code of Civil Procedure that "when the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms," and, therefore, that between the parties "no evidence of the terms of the agreement other than the contents of the writing" can be given. The section states the exceptions to the rule. They are that parol evidence is admissible for some purposes where a mistake or imperfection in the writing is in issue, or its validity is in dispute, or where it is necessary to explain an extrinsic ambiguity, or to establish illegality or fraud. This case does not come within any of the exceptions.

The so-called agreement that sales of liquor should never take place in Moron was essentially a warranty regarding the permanent advantages of the property sold. Such a warranty, if made, would be a part of the contract of sale and not collateral thereto. To justify the admission of parol evidence of a contract between parties who have made an agreement in writing, on the ground that it is collateral, it must be upon a subject distinct from that to which the writing relates. (*Germain Fruit Co. v. J. K. Armsby Co.*, 153 Cal. 594, [96 Pac. 319].) Here the written agreement itself speaks on the subject of the sale of intoxicating liquors, and provides that none shall ever be sold on the premises described. To add to this provision the further stipulation that none should ever be sold in the entire town of Moron, and that the railroad company should see that none was ever sold there, would be to add by parol to a written agreement which on its face purports to be complete upon that subject, and which, under section 1856, is presumed to embrace all the terms agreed on. Such evidence is inadmissible. (*Harrison v. McCormick*, 89 Cal. 330, [23 Am. St. Rep. 469, 26 Pac. 830]; *Germain Fruit Co. v. Armsby Co.*, 153 Cal. 594, [96 Pac. 319]; *Gardiner v. McDonogh*, 147 Cal. 313, 319, [81 Pac. 964]; *Empire I. Co. v. Mort*, 169 Cal. 739, [147 Pac. 960]; *Johnson v. D. H. Bibb L. Co.*, 140 Cal. 99, [73 Pac. 730].)

The case does not come within the rule of such cases as *Sivers* v. *Sivers,* 97 Cal. 521, [32 Pac. 571], and *Whittier* v. *Home Savings Bank,* 161 Cal. 311, 317, [119 Pac. 92], cited by respondent, that evidence of a contract in parol may be given if it is upon a subject upon which the contract is silent. The contract was not silent on the subject. The conversation itself, in which the declaration is said to have been made, covered the conditions actually inserted in the agreement, as well as the stipulation claimed to have been made by parol. The presumption is conclusive that by signing the agreement afterward executed and containing no such stipulation, the parties finally determined not to insist on that stipulation.

It is also clear that Birchard had no authority to make such an agreement for the railroad company. His authority was in writing, and it not only did not authorize him to make such an agreement, but limited his power in that regard to such terms and conditions as the principal should instruct him to make. While it may be that the authority simply to make sales would include power to make the ordinary covenants and stipulations usually included in an agreement of sale, as to which we express no opinion, it cannot be that it would give power to make such an extraordinary and unheard of agreement as that here claimed, an agreement to forever prevent any and all sales of intoxicating liquors by any and all persons, within the area of a town, whether incorporated or not, an undertaking which the state itself, with all its sovereign powers over its inhabitants, is unable to carry out. Such power could not be implied from the mere appointment of an agent to sell land.

Our conclusion is that the judgment is not sustained by the evidence.

The judgment and orders appealed from are reversed.

Sloss, J., and Lawlor, J., concurred.

Hearing in Bank denied.