[Civ. No. 17656.   Second Dist., Div. Three.   Dec. 8, 1950]

J. S. BERKEY, Appellant, v. G. WILLIS HALM et al.,
Respondents.

John C. Allen and Fred Aberle for Appellant.

Hansen & Sweeney and Victor R. Hansen for Respondents.

VALLÉE, J.—Appeal by plaintiff from a judgment entered pursuant to an order sustaining, without leave to amend, the demurrer of defendants G. Willis Halm and Vera L. Halm to plaintiff's third amended complaint. G. Willis and Vera Halm are husband and wife, and Halm-Decker Company, Inc., is a California corporation. Judgment in favor of the corporation followed the sustaining of its demurrer to plaintiff's

original complaint. Plaintiff did not appeal from that judgment.

The complaint was filed May 11, 1949. Two counts are pleaded—the first, an action for damages for breach of an oral contract to sell 88 shares of the corporation's stock; the second, an action based upon the facts set forth in the first cause of action and fraud in the making of a promise without any intention to perform.

The first count alleges that Halm-Decker Company, Inc., is a California corporation engaged in soliciting, selling, and writing insurance. It is a closed corporation with all of its common capital stock—180 shares—owned by the individual defendants. G. Willis and Vera L. Halm are, and were, respectively, president and secretary of the corporation. For 10 years prior to February 15, 1946, plaintiff was gainfully employed by an insurance firm in the county of Los Angeles and was earning in excess of $500 a month. He had during that period built up his own insurance clientele.

On February 15, 1946, defendants and plaintiff orally agreed, effective as of May 1, 1946, as follows: (1) Plaintiff would associate himself with defendants, assume the duties of vice-president of the corporation at a salary of $500 a month, and bring into defendants' business "all of his personal insurance accounts"; G. Willis Halm would continue as president of the corporation at a salary of $500 a month, and Vera L. Halm would continue as secretary at a salary of $175 a month. (2) Defendants would sell 88 shares—"an approximate, undivided one-half interest"—of the common capital stock of the corporation to plaintiff for $4400, payable in the following manner: Plaintiff to execute a promissory note in that amount, payable to G. Willis Halm, bearing date May 1, 1946, due "on or before" three years from date, without interest; but in the event of a default in the payment of the note when due, the amount then due thereunder would bear interest at the rate of 5 per cent per annum until paid. The note would provide that any dividends which might be declared by the corporation and paid upon the stock should be applied toward its payment and that the stock would be hypothecated to G. Willis Halm as collateral security for its payment. In the event the note was not retired from dividends by the end of the three-year period, a new and similar note would be executed for another three-year period or until dividends in the sum of $4400 had been declared on the stock. (3) Defendants' counsel would prepare the agreement and

note, both to be dated May 1, 1946, and they would be executed by the parties ''as soon as they were prepared by defendants' counsel.''

The first count further alleges that plaintiff fully performed all of the terms and conditions of the agreement to be kept and performed by him. In reliance on the agreement, and particularly upon the acquisition of the shares of stock, and believing ''that in the surrendering of his position with his former employer, that over a period of years his position in the insurance business would be more gainful, lucrative and secure by reason of having a vested and permanent interest in said corporation,'' plaintiff irrevocably surrendered his position with his former employer to become a stockholder and vice-president of the Halm-Decker corporation, turned over to the defendants all of his insurance business, ''and all of the premiums thereon inured to the benefit of said corporation and the defendants herein.''

It is further alleged that on many occasions between May, 1946, and March, 1949, in answer to plaintiff's demands and inquiries as to when the agreement and note would be executed, defendants assured plaintiff: that he need not worry; that the parties were operating under the agreement of May 1, 1946; that the agreement was in full force and effect; that it was not necessary to *them* sign the agreement and note, but defendants, ''at the convenience of their counsel,'' would have them prepared and they could then execute them. As a result of this conduct, defendants led plaintiff to believe: that it was not necessary that the agreement and note be immediately executed; that the agreement was in full force and effect; that plaintiff was the owner of 88 shares of the common capital stock of the corporation, subject to the payment of the purchase price; that profits of the corporation were accruing to him; and that the parties were acting under the terms of the agreement.

On March 12, 1949, defendants, for the first time, repudiated the oral agreement, notified plaintiff that they would not further ''recognize, comply with or further perform under the terms and conditions'' of the agreement, that his duties, compensation, and services as vice-president would be completely terminated, and that he would be required to resign as vice-president, and requested his resignation as such. March 12, 1949, was the first time plaintiff had knowledge or notice that defendants repudiated the agreement and did not intend

to comply with its terms. Plaintiff, at all times, was ready and willing to sign the note and agreement. It is alleged upon information and belief that in the month of December, 1946, defendants' counsel reduced the agreement to writing and prepared the note for plaintiff's signature, and that ever since that time defendants have had the agreement and note in their possession, but at no time informed plaintiff that they had been prepared and were ready for signature. By reason of defendants' failure to perform the terms of the oral agreement, plaintiff has been damaged in the sum of $41,669.67.

The second count incorporated the entire first count by reference and alleged: that from February 15, 1946, until May 1, 1946, defendants promised plaintiff that if he would give up his then association and associate himself with the defendants, they would transfer to him "one-half" of the stock of the corporation, and that he would share equally in the salaries and profits inuring to the corporation; these promises were made by defendants with no intention upon their part of performing the same; the promises were false and untrue, were made with intent to deceive and defraud and induce plaintiff to change his position; plaintiff relied upon the promises, gave up his valuable association in another insurance company, and associated himself with defendants. Defendants failed to perform, to plaintiff's damage in the sum of $41,669.67.

Defendants demurred to the complaint on the grounds: That neither the first nor the second count state facts sufficient to constitute a cause of action; that both counts are barred, (1) by the provisions of section 1973, subdivision 1, of the Code of Civil Procedure, (2) by the provisions of section 339 of the Code of Civil Procedure; and that the complaint is uncertain in specified particulars. The ground upon which the court sustained the demurrer without leave to amend is not stated.

The argument of respondents is that since the complaint alleges that under the oral agreement the maturity date of the note was to be May 1, 1949, and upon nonpayment, a new and similar note was to be executed for another three-year period, it affirmatively appears that the alleged agreement was not to be performed within one year and, being oral, was within the provisions of section 1973, subdivision 1. The promissory note was to be paid "on or before" May 1, 1949, and from dividends. By its terms the agreement was capable of being performed within a year. An oral agreement which,

by its terms, may be performed within a year is not within the statute of frauds even though it may not be performed within that time. (*McKeany* v. *Black*, 117 Cal. 587 [49 P. 710]; *Columbia Pictures Corp.* v. *De Toth*, 87 Cal.App.2d 620, 631-635 [197 P.2d 580].)

While the agreement was not within the section relied upon by respondents, it is nevertheless one which is required by the statute of frauds to be in writing. (Civ. Code, §§ 1624a, 1724; Code Civ. Proc., § 1973a.) ■ A contract to sell and deliver stock in a corporation of the value of $500 or upwards is within the statute of frauds. (*Mayer* v. *Child*, 47 Cal. 142; *Mattingly* v. *Pennie*, 105 Cal. 514 [39 P. 200, 45 Am.St.Rep. 87]; 37 C.J.S. 630, § 142; 49 Am.Jur. 580, § 263.) Plaintiff, therefore, is not entitled to recover on the first count unless defendants are estopped to plead the statute as a defense to the action.

■ Where a party to an oral contract has been induced by the other party seriously to change his position in reliance upon, or in performance of, the contract, and would suffer an unconscionable injury if it were not enforced, or if unjust enrichment would result if a party who has reaped the benefit of the other's performance were allowed to rely upon the statute, the doctrine of estoppel will be invoked and the statute of frauds will not be available to perpetuate the fraud.
■ Where either an unconscionable injury or unjust enrichment would result from refusal to enforce the contract, the doctrine will be applied whether or not plaintiff relied upon representations that a writing is not necessary or will be executed or that the statute will not be relied upon as a defense. (*Monarco* v. *Lo Greco*, 35 Cal.2d 621, 623, 626 [220 P.2d 737].) The Monarco case is the latest expression of the Supreme Court on the subject.

The doctrine has been applied in situations where the conduct, promises, and representations of a defendant, relying on the statute, were similar to the conduct, promises, and representations of defendants here. In *Frey* v. *Corbin*, 84 Cal.App.2d 536 [191 P.2d 21], plaintiff, a sublessee, brought an action to establish his tenancy. He had requested a written lease from his sublessor but was told, ''You have nothing to worry about; as long as we are lessees of the property, you can occupy the premises.'' In reliance upon this promise, plaintiff made no effort to obtain a separate lease for himself from the owners and, in addition, made improvements on the premises. The promise made by the defendant and the

plaintiff's reliance thereon were held to estop the defendant from invoking the statute of frauds.

In the present case both elements referred to in the Monarco case (*Monarco* v. *Lo Greco,* 35 Cal.2d 621 [220 P.2d 737]) are present. The complaint alleges facts showing that plaintiff was induced by defendants to so seriously change his position in reliance upon, and in performance of, the contract, that he would suffer an unconscionable injury if it were not enforced and, in addition, that defendants have reaped the benefits of the contract so that they would be unjustly enriched if they could escape its obligations.

Defendants seek to sustain the judgment as to the first count on the ground that the cause of action is barred by the two-year statute of limitations. (Code Civ. Proc., § 339.) It is unnecessary to decide the point. If we assume that defendants are correct, under the facts alleged they would be estopped from taking advantage of the statute. ■ It is well settled that a person, by his conduct, may be estopped to rely upon the defense of the statute of limitations; and where the delay in commencing action is induced by the conduct of the defendant, it cannot be availed of by him as a defense. (*Adams* v. *California Mut. B. & L. Assn.,* 18 Cal.2d 487, 488 [116 P.2d 75] ; *Rapp* v. *Rapp,* 218 Cal. 505, 509 [24 P.2d 161] ; *Langdon* v. *Langdon,* 47 Cal.App.2d 28, 31 [117 P.2d 371] ; *Miles* v. *Bank of America etc. Assn.,* 17 Cal.App.2d 389, 398 [62 P.2d 177].)

In *Langdon* v. *Langdon, supra,* 47 Cal.App.2d 28, an oral contract was entered into in March, 1937, between plaintiff and defendant, father and son, whereby the son agreed to pay his father a $100 bonus for each house painted by him. In February, 1938, the father demanded the bonus due him and the son replied, ''Gee Dad! It takes about three years to get started. I told you that before. It takes about three years to get started in the building business. I can't do anything for you now. Be patient and you will get your money.'' After entering into the contract the defendant repeatedly requested the plaintiff to delay the collection of the bonus until the defendant would be well started in the building business. It was held that the defendant was estopped from relying on the statute of limitations.

■ The complaint alleges that defendants promised plaintiff that the oral contract would be reduced to writing and would be executed by them, they repeatedly acknowledged the existence and validity of the contract, and accepted the bene-

fits which accrued from plaintiff's performance. It sufficiently appears that the delay of which defendants complain was induced by their own conduct, promises, and representations. We are of the opinion that the complaint alleges sufficient facts, which, if established by evidence, would estop defendants from setting up the bar of the statute.

Under the facts alleged there was no necessity of a tender of performance by plaintiff. He sufficiently alleged that he has been at all times ''ready and willing to do so,'' but was prevented by the conduct of defendants. (*Lundblade* v. *Boyes,* 101 Cal.App. 741, 743 [282 P. 399].)

Defendants' assertion that the second count does not state a cause of action in fraud is without merit. The facts essential to the statement of a cause of action in fraud or deceit based on a promise made without any intention of performing it (Civ. Code, §§ 1572, subd. 4, 1710, subd. 4) are: (1) a promise made regarding a material fact without any intention of performing it; (2) the existence of the intent at the time of making the promise; (3) that the promise was made with intent to deceive or with intent to induce the party to whom it was made to enter into the transaction; (4) that the promise was relied upon by the party to whom it was made; (5) that the party making the promise did not perform; (6) that the party to whom the promise was made was injured. (*Lundblade* v. *Boyes,* 101 Cal.App. 741 [282 P. 399]; *Lawrence* v. *Gayetty,* 78 Cal. 126, 133 [20 P. 382, 12 Am.St.Rep. 29]; *Martin* v. *Lawrence,* 156 Cal. 191, 194 [103 P. 913]; *Millar* v. *Millar,* 175 Cal. 797, 803 [167 P. 394, Ann.Cas. 1918E 184, L.R.A. 1918B 415]; *Becker* v. *Schwerdtle,* 141 Cal. 386, 389-390 [74 P. 1029]; *Benson* v. *Hamilton,* 126 Cal.App. 331, 334 [14 P.2d 876]; *Ayers* v. *Southern Pacific Railroad Co.,* 173 Cal. 74, 79 [159 P. 144, L.R.A. 1917F 949]; *Longway* v. *Newbery,* 13 Cal.2d 603, 606, 611 [91 P.2d 110].) The second count alleged all of these facts. The cause of action is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud.

The second count sufficiently pleads facts showing that plaintiff did not discover the fraud until within three years prior to the filing of his complaint. (*Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412, 436-444 [159 P.2d 958].)

We hold that each count of the complaint states facts sufficient to constitute a cause of action. We do not decide, however, that the complaint may not be subject to special

demurrer, and the court may in its discretion require the clarification of uncertainties or ambiguities, if any, in the complaint.

Reversed.

Shinn, P. J., and Wood (Parker), J., concurred.