[Civ. No. 6383.   Fourth Dist.   June 30, 1961.]

S. EDWIN HAWTHORNE et al., Plaintiffs and Appellants,
v. DAVE FARRELL et al., Defendants and Appellants.

Ernest F. Shelander and Schlegel, Friedemann & Schlegel for Plaintiffs and Appellants.

Morgan Cuthbertson for Defendants and Appellants.

SHEPARD, J.—This is an appeal by defendant Dave Farrell from a money judgment against him in favor of plaintiffs S. Edwin Hawthorne and a partnership doing business under the name of Elliott, Wilmsen & Elliott, in the amount of $5,000 for each such plaintiff, and a cross-appeal by such plaintiffs from that portion of the judgment denying plaintiffs relief on their first and second causes of action.

## FACTS

In general substance, the facts shown by the record before us are as follows: Defendant Dave Farrell was at all times herein mentioned the president and controlling stockholder of the two defendant corporations named Los Angeles Trust Deed and Mortgage Exchange (hereinafter called "Corpora-

tion'') and Trust Deed and Mortgage Exchange. The ramifications of corporate structures of this type and their purposes are easily recognizable by alert investigators (see *Securities & Exchange Com.* v. *Los Angeles Trust Deed & Mortgage Exchange*, 186 F.Supp. 830; *Los Angeles Trust Deed & Mortgage Exchange* v. *Securities & Exchange Com.*, 285 F.2d 162), but since no appeal has been taken from that part of the judgment which denies relief against the corporations, such matters need not be here discussed.

Farrell claims that early in 1956 he was contacted by William R. McAllister, purportedly to secure financing for purchase and operation of an allegedly promising uranium mine in Wyoming. Farrell claims McAllister produced certain high-grade ore samples and documents which raised Farrell's optimism. Farrell claims that he made ''certain preliminary investigations'' and became sufficiently convinced of prospective success to contact several other persons on a plan to form a limited partnership, called Echo Exploration Company (hereinafter called ''Echo''). It was proposed to raise what in reality amounts to $35,000 in assets for purchase and operation. This would consist of a contribution of a power shovel valued by McAllister at $10,000, exercise of an option to purchase three uranium mining claims from one Hefter for the sum of $10,000, and $15,000 in operating capital over and above the value of the power shovel and the purchase price of the claims. The limited partners were to receive 25 per cent (less certain deductions) of all ore produced, and McAllister all of the rest of the net after expenses and royalties. After the articles of limited partnership were finally drawn, in accordance with the discussions of the parties, the partnership agreement showed contribution of $30,000 on an original basis of a one-sixth share to each limited partner for each $5,000 contributed, but one of the one-sixth shares went to Corporation for services in supervising the organization, or, as Farrell put it in his testimony, ''commission.'' Thus five-sixths went to cash contributors and one-sixth to Corporation for organization.

In contacting plaintiffs herein, Farrell presented the usual roseate picture of satisfactory investigation by himself, practical certainty of success and, as a clincher, the statement that he was putting $5,000 of his own capital into the business. Arthur Leroy Preece, an employee of Corporation, worked along with Farrell in helping secure contributors, but most of the representations came directly from Farrell.

It ultimately turned out that Corporation purportedly paid to Farrell and Preece each the sum of $1,250 for organizational purposes and sold the balance of its interest to Takashi Teramaye ($500), William J. Lyon ($500), Albert J. Johnson ($500), F. E. Finck ($500), and Jack M. Caplin ($500). Actually, Farrell and Preece simply endorsed the checks from corporation directly back to Corporation so that the books would indicate a cash contribution by Farrell of $1,250. Farrell's testimony of this transaction is as follows:

"A. As I have explained, this was a bookkeeping entry, the check merely coming to me and being endorsed back over for the purpose of establishing the interest on the record. . . .

"Q. And your $1250.00, and $1250.00 from Mr. Preece, that was merely a bookkeeping entry, as you stated; isn't that right? A. That is correct."

Thus, it is clear that Farrell, far from investing any of his own outside capital as a cash investment, put himself into a position of actually making a cash profit on the entire transaction even though Echo failed completely, since Farrell was a major stockholder and owner of Corporation. The fact that Farrell never at any time put in any outside cash as an investment of his own was unknown to plaintiffs herein until on or about December 20, 1956, at which time a written résumé of the financial transactions was sent to them. Farrell was the one handling authorizations for payment of money. Farrell was the one who took assignment of the option from McAllister. Farrell was the one who made the vital contacts with Hefter, the alleged owner of the mining claims. Farrell was the one who made alleged arrangements with McAllister and who told the investors that McAllister was putting in a power shovel at $10,000 which was worth $18,000. Farrell was the one who represented that he himself was so convinced of the worth of the project that he was investing $5,000 of his own capital.

Plaintiffs testified that they placed special confidence in the business acumen and knowledge of Farrell as the head of Corporation, and that the principal reason they were persuaded to invest was because Farrell stated that he himself was investing his own capital. In the ultimate it turned out that Hefter's claims were worthless, that the ore purportedly therefrom did not come from such claims at all, that McAllister did not own the power shovel and his papers on which he based such claim were forgeries. Farrell claimed and pro-

duced accounts and checks to show that most of the money of the investors went to McAllister and Hefter.

### REPRESENTATION BY FARRELL

Farrell's representation that he intended investing his own capital was a representation of a material fact in inducing plaintiffs to invest. Under the evidence, the trial court was entitled to conclude that this was a false representation and that Farrell had no such intention at the time the representation was made. Such a representation is actionable under proper circumstances by the injured party. (*Mary Pickford Co.* v. *Bayly Bros., Inc.,* 12 Cal.2d 501, 510 [1] [86 P.2d 102] ; *Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412, 430 [4] [159 P.2d 958] ; *Neff* v. *Engler,* 205 Cal. 484, 489-490 [4-6] [271 P. 744].) The well-established rule must be here kept in mind that, as stated in *Key* v. *McCabe,* 54 Cal.2d 736, 738 [1] [8 Cal.Rptr. 425, 356 P.2d 169] :

". . . when a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact."

The evidence supports the trial court's finding that Farrell made the representation without any intention of performing it. (*Mary Pickford Co.* v. *Bayly Bros., Inc., supra,* 510 [3].) Plaintiffs testified that they relied on such representation, and the sum total of the evidence supports that testimony. That Farrell did not perform is clear. That plaintiffs were injured is also clear. Thus, all necessary elements outlined in the authorities cited by appellant are present. (*Berkey* v. *Halm,* 101 Cal.App.2d 62, 69 [8] [224 P.2d 885] and authorities there cited.)

### LIMITATION OF ACTIONS

That the time within which a cause of action for fraud commences to run is when the fraud is discovered or when facts become known from which the fraud should, by the innocent party, have been recognized, is well established. (*Berkey* v. *Halm, supra,* 69 [9] ; *Hobart* v. *Hobart Estate Co., supra,* 438-439 [13].) The complaint here, originally based on the common count of money had and received, was sufficient to allow evidence of fraud. (*Voss* v. *Friedgen,* 141 Cal.App.2d 135, 136 [1] [296 P.2d 424] ; *Victor Oil Co.* v. *Drum,* 184 Cal. 226, 242 [193 P. 243].) The entire case was tried on the basis of fraud. (*Lein* v. *Parkin,* 49 Cal.2d 397,

400 [3] [318 P.2d 1].) Thus the issue of fraud and the statute of limitations was before the court and was intentionally tried by the parties. Plaintiffs, at the close of the evidence, were allowed to amend their complaint to base it on such evidence, presenting a fourth count based on directly alleged fraud. Such count was filed as of the date of the motion, December 7, 1957. Furthermore, the only objection made by defendant to the filing of this fourth count was on the ground "that it doesn't conform to proof, barred by the statute of limitations." Defendant's request to interpose the plea of the statute of limitations in addition to having the count deemed denied, was granted. Defendant was then invited to produce any further testimony he desired to produce, and stated he had nothing further to offer. It is quite apparent that defendant made no contention that the issue was not before the court.

While it is true that plaintiffs knew sometime in April 1956, that Farrell, instead of investing $5,000 was, in fact, investing only $1,250, it was not until December 20, 1956, that plaintiffs had any information which might lead them to believe that Farrell had not put into the transaction any outside capital whatever and was in a position, considering his majority ownership of Corporation, to actually make money on the deal even though Echo failed entirely. Thus count four was filed within the three year limitation of time provided by Code of Civil Procedure, section 338, paragraph 4.

As was said in *Calkins* v. *Calkins*, 63 Cal.App. 292, 305 [218 P. 611]: "In considering the record we must, of course, remember that there is no hard-and-fast rule as to what fact or circumstance is required to compel further inquiry upon the part of the injured party and that in such cases there is a wide zone for the exercise of the discretion of the trial judge."

Also, in *Ramey* v. *General Petroleum Corp.*, 173 Cal. App.2d 386, 400 [343 P.2d 787], it is said: " 'When facts are susceptible to opposing inferences, whether a party had notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and whether by prosecuting such inquiry he might have learned such fact, are questions of fact. [Citation.]' "

The application of the three-year statute from date of discovery was proper. The whole basis of recovery and the basis upon which the entire action was tried was on the allegation of fraud. (Prosser on Torts [2d ed.] 487; *B. F. Goodrich Co.*

v. *Naples*, 121 F.Supp. 345, 348; *MacDonald* v. *Reich & Lievre, Inc.*, 100 Cal.App. 736, 741 [6] [281 P. 1016].)

As above noted, the only objection that defendant has called to our attention that was made to the filing of the amendment to the complaint setting forth the fourth cause of action, was that it did not conform to the proof and was barred by the statute of limitations. He must therefore be deemed to have waived all other objections.

### FINDINGS

There is no merit in appellant's contention that there was no finding on the plea of the statute of limitations as to the fourth cause of action. The court found discovery of the fraud occurred December 20, 1956. This can lead to only one conclusion, which is that the action is not barred by Code of Civil Procedure, section 338, paragraph 4, which is the section that appellant urges on this appeal. (*Rutherford* v. *Rideout Bank,* 11 Cal.2d 479, 487 [7] [80 P.2d 978, 117 A.L.R. 383].)

### THE JUDGMENT

Defendant complains that the judgment is ambiguous in that it states: ''That each of the plaintiffs have judgment against the defendant Farrell in the sum of $5,000.00, . . .''

From both pleadings and the evidence, it is perfectly clear that there are two plaintiffs, and only two plaintiffs, in this case. They are, first, S. Edwin Hawthorne, a natural person, as an individual, and, second, a partnership named ''Elliott, Wilmsen & Elliott,'' composed of Francis W. Elliott, Margaret D. Elliott, Arthur B. Wilmsen, Murl G. Wilmsen, Walter R. Elliott and Avis F. Elliott. Such other investors in Echo as brought suit did so in another jurisdiction and are not involved in the case here at bar.

Thus it is perfectly clear that there is a judgment in favor of plaintiff S. Edwin Hawthorne for $5,000, and a judgment in favor of plaintiff partnership Elliott, Wilmsen & Elliott for $5,000, constituting a total for both, when added together, of $10,000. We think the judgment is sufficiently certain and requires no amendment.

The foregoing views make it unnecessary to discuss the appeal of plaintiffs.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied July 28, 1961.