[Civ. No. 24012. First Dist., Div. One. May 29, 1968.]

DALLMAN CO., Plaintiff and Respondent, v. SOUTHERN HEATER COMPANY, Defendant and Appellant.

584

Stern, Stotter & Rosenberg, Lawrence H. Stotter, Fulop, Rolston & Burns, Irwin M. Fulop, Marvin G. Burns and Lowell R. Marks for Defendant and Appellant.

David Livingston for Plaintiff and Respondent.

ELKINGTON, J.—Plaintiff-respondent Dallman Company (Dallman) filed an action against defendant-appellant Southern Heater Company (Southern) for damages for loss of business profits and good will as a result of a breach of contract. From a judgment for $262,870.43 Southern appeals.[1] By stipulation the issue of liability was first tried by the court which made an oral determination thereon in favor of plaintiff. The court then referred the cause to a court commissioner for further hearings on the issue of damages. The parties stipulated that the court might consider the court commissioner's report as evidence, subject to the right of either party to object thereto.

FIRST ASSIGNMENT OF ERROR: The court's finding No. 1 as to a contract between the parties is too uncertain to support the judgment herein.

Finding No. 1 states: "In the year 1952 defendant made a proposal to plaintiff, the terms of which were as follows: That plaintiff would purchase heaters from defendant; that such heaters would be manufactured under the private label of plaintiff, viz: Climax; that different grades as to thickness of the wall of the tanks would be used; that different names were to be used to identify heaters, such as Climax Special,

---

[1]The complaint alleged certain other damages which are not here the subject of controversy. The portion of the judgment relating to loss of business profits and good will was $250,000.

Climax Standard, Climax Heavy Duty, Climax Superior and Climax Supreme, and that the period of time during which the tanks in such heaters would be guaranteed against defects would vary and the longer the period the higher the price; with respect to the case of a leaking tank, if such defect appeared within the period of fifteen months, the heater would be replaced; that with respect to other defects the period of protection was fifteen months; that said periods would in all cases commence when the heater was installed in the home of the ultimate user except in the case of housing tracts and in that case when the home was sold to the initial purchaser; that although defendant customarily attached to most of its heaters a card containing a written guarantee containing a statement that it should be returned to defendant by the householder at the time when he made a claim for service, compliance would not be required, and that any provision inconsistent with the foregoing terms would be waived; that in order to provide the type of service above described defendant would establish service agencies in proximity to the several places of business of plaintiff in Northern California, with a supply of tanks and various other parts of heaters for purpose of replacement at the site, so as to provide prompt response to complaints and avoid the interruption of hot water in the home in case of defect. The type of service above described was that customarily provided for homeowners by other manufacturers whose heaters were distributed and installed in said area, including those from whom plaintiff was prior to the agreement above mentioned purchasing its requirements in connection with its business of distribution of plumbing and heating equipment to its large number of customers. At the time of said proposal plaintiff so informed defendant and also that such service was essential to the ability of plaintiff to compete with other distributors of heaters and unless it was supplied plaintiff would suffer the loss of business, customers and goodwill.[2]

Civil Code section 1643 provides: ''A contract must receive

---

[2]Other findings which are pertinent to the instant assignment of error follow:

''2. Plaintiff accepted said proposal and duly performed all the terms and conditions of said agreement on its part to be performed, and in performance thereof plaintiff contemporaneously gave defendant an order for one thousand heaters and in the course of the ensuing four years bought from defendant the major part of its requirements amounting in terms of purchase price to approximately a million dollars. In so doing plaintiff relinquished the benefits of the service which it was being accorded by other manufacturers as above set forth. Inherent in each such purchase were the provisions of the proposal above set forth.

such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties.''

■ The Supreme Court in *California Lettuce Growers, Inc.* v. *Union Sugar Co.*, 45 Cal.2d 474, 481 [289 P.2d 785, 49 A.L.R.2d 496], restated a settled rule of construction to the effect that '' 'The law does not favor but leans against the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the reasonable intention of the parties if that can be ascertained.' '' ■ In *McIllmoil* v. *Frawley Motor Co.*, 190 Cal. 546, 549 [213 P. 971], the same court stated: ''The description of the subject matter of agreement may be indefinite, and yet if it is capable of being identified and rendered definite and certain by evidence *aliunde* the contract is enforceable.''

■ Applying the standards of the cited authority, the contract as found by the trial court is, in our opinion, reasonably certain and capable of being carried into effect. Our conclusion is fortified by the finding that Southern itself recognized and abided by the terms of the contract as found, for a period of approximately four years prior to its anticipatory breach.

■ SECOND ASSIGNMENT OF ERROR: Findings No. 1 and No. 7 are inconsistent. In any event, the contract alleged by plaintiff is invalid and barred by the statute of frauds.

The claimed inconsistency is pointed out by defendant in the following manner: ''In Finding No. 1 the court states that the period of protection for defects was fifteen months and in some instances longer. Yet the court in Finding No. 7 states: 'Said agreement was not one that by its terms was not to be performed within a year from the making thereof.' ''

''3. Pursuant to and in performance of said agreement, defendant established service agencies and for a period of approximately four years substantially complied with said agreement and during said period in the regular course of business plaintiff sold heaters which it had purchased from defendant to retailers, contractors and subcontractors who in turn installed them in various structures. At all times herein mentioned this was the customary practice of distributors such as plaintiff, and in the event that a tank developed a leak the installing plumber was so informed by his customer and the business relationship between them depended on the promptness with which the faulty condition was rectified. At all said times defendant was aware of this.

''4. On June 1, 1956, defendant informed plaintiff that it would no longer provide such service or comply with the provisions of said agreement, as hereinabove set forth, and thereby anticipatorily breached said agreement.''

It does appear, as contended by Southern, that the contract as found by the court was by its terms not to be performed within one year from the making thereof. Defendant's guarantee and promise to service the heaters was to take effect *in futuro* upon their installation and then would continue for 15 months. Since the contract could not be *fully* performed within one year it was violative of the statute of frauds (Civ. Code, § 1624, subd. 1). (See *Wickson* v. *Monarch Cycle Mfg. Co.*, 128 Cal. 156 [60 P. 764, 79 Am.St.Rep. 36]; *Fisher* v. *Parsons*, 213 Cal.App.2d 829, 837-838 [29 Cal.Rptr. 210]; *Gressley* v. *Williams*, 193 Cal.App.2d 636, 640 [14 Cal.Rptr. 496].) However, the findings and their supporting evidence indicate that the agreement was fully performed by Dallman. Such a fully executed parol contract is not affected by the statute of frauds. In *James* v. *Hall*, 88 Cal.App. 528, 534 [264 P. 516], it was held that where a party to a contract ''had fully performed all of the things to be performed by him [such] was sufficient to take it out of the statute. The statute of frauds has no application to an executed oral agreement.'' (See also *Kirkpatrick* v. *Tapo Oil Co.*, 144 Cal.App.2d 404, 414 [301 P.2d 274]; *Kreling* v. *Walsh*, 77 Cal.App.2d 821, 832 [176 P.2d 965]; *Dean* v. *Davis*, 73 Cal.App.2d 166, 168 [166 P.2d 15].)

The court made an additional finding, which had substantial evidentiary support, relating to the instant statute of frauds issue. The finding states:

''At the time of the making of said agreement plaintiff was purchasing its requirements of heaters from manufacturers other than defendant and was receiving the kind of service which defendant promised to provide as above stated. At said time plaintiff changed its position and in reliance on defendant's promises, plaintiff substantially discontinued the purchase of heaters from said other manufacturers and depended on defendant to provide such service as above set forth. If the enforcement of said agreement between plaintiff and defendant were denied, an unconscionable injury would result to plaintiff, and defendant would be permitted to enjoy unjust enrichment resulting from the benefits accruing to it as the result of plaintiff's performance. Defendant is estopped from relying on the statute of frauds in the defense of this action.''

An oral agreement (otherwise within the statute of frauds) will be held enforceable if the plaintiff, in justified reliance upon it, has so changed position that unconscionable

injury would result, or the defendant, having accepted the benefit of the contract, would be unjustly enriched by its non-enforcement. (See *Day* v. *Greene,* 59 Cal.2d 404 [29 Cal.Rptr. 785, 380 P.2d 385, 94 A.L.R.2d 802] ; *Monarco* v. *Lo Greco,* 35 Cal.2d 621, 623 [220 P.2d 737] ; *Berkey* v. *Halm,* 101 Cal.App. 2d 62, 67 [224 P.2d 885] ; 1 Witkin, Summary of Cal. Law (7th ed. 1960), Contracts, § 113, p. 121.)

We conclude that the judgment is fully supported by the findings and evidence on the issue of the statute of frauds.

THIRD ASSIGNMENT OF ERROR : The referee failed to make findings of fact as required by Code of Civil Procedure section 643 and the court's findings of fact based upon evidence not adduced before it are insufficient to support a judgment.

The reference here was made under the authority of Code of Civil Procedure section 638, subdivision 2, ''To ascertain a fact necessary to enable the court to determine an action. . . .'' The facts which were the subject of the reference were the existence and amount of damages. The reference was based on stipulation of the parties.[3]

Such a reference is a *special* reference which contemplates a report to be adopted or rejected by the court. In such a refer-

---

[3]The stipulations were made at the conclusion of the hearing on the issue of liability.

The first was oral and appears from the following: ''THE COURT: That leaves open the question as to whether or not damages attributable to this breach of contract can be established by the plaintiff. Now, as I indicated, it is my intention to refer this matter to the Court Commissioner, Mr. Ahlbach, to conduct further hearings on the matter of damages, and I would suggest that arrangements be made with him as to the time and the place for those hearings. And I should like a stipulation, if you gentlemen would care to enter into it, that the Court may consider the report to be submitted by the Court Commissioner as evidence in the case subject to the right of either or both parties to object to that report and make another argument before the Court. [SOUTHERN'S ATTORNEY]: I will so stipulate, your Honor. [DALLMAN'S ATTORNEY]: Yes, your Honor. [SOUTHERN'S ATTORNEY]: Is it contemplated that at the time of the submission of any report that any oral argument will be given? Further testimony, I understand, could come in? THE COURT: The stipulation is that opportunity will be given when the report is submitted by either party to object to it and the Court will exercise discretion in permitting liberal approach to that. . . . On the question of findings, it can be delayed until we ascertain the amount of damage, if any, and at that time we will request that the plaintiff prepare findings and conclusions in accordance with the decision announced. [DALLMAN'S ATTORNEY]: Yes, your Honor. [SOUTHERN'S ATTORNEY]: Thank you, your Honor. THE COURT: All right, gentlemen.''

The second stipulation appears in the court's written order of reference.

''Pursuant to stipulation of the parties, it is hereby

''ORDERED that a reference be had to determine the remaining issues in the cause and for that purpose the cause is referred to Commissioner

ence findings of fact and conclusions of law by the referee are not required. Such findings and conclusions must be made by the trial court as was done here. (See *Ellsworth* v. *Ellsworth,* 42 Cal.2d 719, 723 [269 P.2d 3]; *Estate of Bassi,* 234 Cal. App.2d 529, 536-537 [44 Cal.Rptr. 541].)

Referring to such a special reference the court in *National Brass Works* v. *Weeks,* 92 Cal.App. 318, 321 [268 P. 412], stated: "[I]f the order of reference be made pursuant to and is based upon subdivision 2 of said section 638, then the report of the referee has no such binding effect upon the court, further proceedings by the court being essential to a complete determination of the cause (*Clark* v. *Millsap,* 197 Cal. 765 [242 P. 918]). In such case the court ultimately determines the facts and the law by rendering its decision containing its findings of fact and conclusions of law which serves as the basis for the judgment which shall be entered; and the judgment thus entered is in nowise dependent upon the report of the referee for support but is grounded on the decision of the court.''

Code of Civil Procedure section 643, relied upon by Southern, relates to a *general* reference to ''try any or all of the issues of an action'' under section 638, subdivision one. In such a reference the findings of the referee upon the whole issue must stand as the findings of the court, and upon filing of the findings, judgment may be entered thereon in the same manner as if the action had been tried by the court. (See Code Civ. Proc., § 644; *Ellsworth* v. *Ellsworth, supra,* 42 Cal.2d 719, 722.)

Southern's contention that the court could not make find-

William Ahlbach as referee, and for the guidance of the referee the Court instructs as follows:

''1. The referee shall investigate the issue of damages claimed by plaintiff for loss of customers, business and goodwill caused by the breach by defendant of its contract to provide service, including repairs to and replacement of water heaters and parts thereof, which were sold by defendant to plaintiff and installed in various homes. . . .

''5. Each party shall be entitled to adduce before the referee such evidence material to said issues as it may desire and to produce witnesses for that purpose, and in the event that any such witness whose testimony is material shall not be subject to subpoena of this Court, the testimony of such witness may be taken by deposition.

''6. On conclusion of the reference the referee shall prepare a report setting forth the result of his investigation of said claims. The original of said report shall be filed herein and copies thereof shall be delivered to the parties and said report shall be subject to consideration and approval, disapproval or modification by the Court. Each party shall have the right to file objections to the report and have such objections heard and determined by the Court.''

ings of fact based upon evidence not adduced before it is also without merit. Code of Civil Procedure section 638, subdivision 2, expressly authorized a reference to ascertain and report facts necessary to enable a court to determine an issue when the parties agree to such procedure. Southern, having stipulated to just such a procedure, may not now complain.

█ FOURTH ASSIGNMENT OF ERROR: The court did not make findings on a material issue, to wit, the value of lost good will, but, instead, purported to make a finding as to value of lost net profits—an issue not within the issues framed by the pleadings and/or the pretrial order, and there is consequently no finding of damages which will support the judgment.

The pretrial order provided that one of Dallman's contentions as to damages was *"Loss of customers and business good will* caused by such failure of performance on the part of the defendant." (Italics added.)

Finding of fact No. 6 states: "As the proximate consequence of the breach of contract by defendant during the year 1956 and for some years thereafter plaintiff's customers discontinued entirely to purchase materials from plaintiff or substantially reduced the volume of their business, and plaintiff's efforts to retain said business by endeavoring to provide service and making available other sources of supply were of no avail, with the result that plaintiff suffered a *loss of good will and of profits* which plaintiff would have enjoyed if the loss of business from customers had not occurred." (Italics added.)

Finding of fact No. 8 reads: "As the direct and proximate consequence of defendant's breach of contract as above set forth, plaintiff was deprived of a large volume of sales to its customers, on which it would have earned substantial *net profits, and the amount of such net profits from the business which plaintiff would have transacted with its customers* and which was lost as a direct and proximate consequence of defendant's breach is the sum of $250,000.00." (Italics added.)

Southern argues that a finding as to the amount of lost "net profits" is not responsive to the damage issue of "loss of customers and business good will." Hence, it says, the judgment is unsupported by the findings.

We cannot agree with this contention. Dallman sought damages flowing from loss of customers and business good will. Such damages could only be determined by an inquiry into the resulting monetary loss. Such monetary loss is neces-

sarily equivalent to the lost net profits proximately resulting from the "loss of customers and business good will."

In *Stott* v. *Johnston,* 36 Cal.2d 864 [229 P.2d 348, 28 A.L.R.2d 580], the plaintiff sought damages, among other things, for "loss of customers and good will." In assessing the proof of loss of good will the court set out the plaintiff's figures of gross income and net profits and held that damages for loss of prospective profits were recoverable even though the complaint was couched in terms of good will.

The findings as to lost profits were responsive to the damage issue before the court. They are therefore properly supportive of the judgment.

 FIFTH ASSIGNMENT OF ERROR: Material findings of the court as to damages are unsupported by the evidence.

Evidence was introduced tending to show a substantial loss of business from many water heater customers of Dallman following the year 1955. In some instances these customers stopped buying entirely; in others the amount of purchases was sharply reduced. The president of Dallman testified that he believed these customers "reduced their volume or discontinued buying because of the problems that we had in providing service for the heaters." He related specific instances where customers became angry and stopped doing business with his company because of the lack of water heater service. Several of Dallman's customers testified that they stopped doing business with Dallman because of the lack of water heater service. One of them spent $518,335 with Dallman in 1955; if the purchases from Dallman had continued at the same rate through 1963 they would have totaled approximately $4,000,000 in additional sales.

A "Loss of Business Recapitulation" was placed in evidence. This document indicated the total volume of business of 60 water heater customers for 1955 (the last full year of water heater service by Southern) to be $1,766,699. It showed that if each of these customers had continued their 1955 volume of business through 1963, the year in which this action was commenced, their aggregate purchases from Dallman would have been greater by $11,568,570. Evidence indicated that *gross* profit on that increased business would have been 15.3%, or $1,769,912. Dallman's president was asked about the expenses of the business during the years covered by the "Loss of Business Recapitulation." He testified that there was very little change in overhead expenses such as salaries, accounting, rents and sales costs. This testimony tended to

establish that *gross* profits were substantially equivalent to *net* profits.

Southern first contends that Dallman's testimony as to overhead costs had no bearing on the net profits lost. We disagree. In *Automatic Vending Co.* v. *Wisdom*, 182 Cal.App. 2d 354, 358 [6 Cal.Rptr. 31], it is stated, "While the general rule is that one will not be permitted to recover gross profits, in the event of a breach of the contract, nevertheless under certain circumstances as where, for example, '. . . plaintiff's expenses of operating his business are fixed and would have continued in an equal amount even if the contract had not been breached by the defendant, an award of gross profits may be allowed to the plaintiff, since, in such a situation, the gross profits involved would also constitute the net profits which the plaintiff would have earned under the agreement.' (14 Cal.Jur.2d, Damages, § 134; see also *Phalanx Air Freight, Inc.* v. *National etc. Freight Corp.*, 104 Cal.App.2d 771, 775 [232 P.2d 510]; *Walpole* v. *Prefab Mfg. Co.*, 103 Cal.App.2d 472, 482-483 [230 P.2d 36].)"

Moreover, the record shows that in addition to the testimony related above, twice Dallman sought to establish that with the increased sales its fixed expenses would not have increased and that net profit would have been substantially the same as gross profit. Such evidence would have been proper. However, each time Southern objected to such evidence and each time the objection was sustained by the referee. Southern may not now complain of the lack of such evidence. In *Watenpaugh* v. *State Teachers' Retirement System*, 51 Cal.2d 675, 680 [336 P.2d 165], the court stated: "Under the doctrine of invited error, a party may not object to the sufficiency of the evidence to support a finding against him when the lack is the result of improper exclusion of evidence at his own instance. [Citations.] A party who has prevented proof of a fact by his erroneous objection will not be permitted to take advantage of his own wrong, and a reviewing court will assume that the fact was duly proved. [Citation.]"

Southern then contends that the evidence relating to Dallman's damages was too speculative and uncertain to properly support the findings and judgment.

In *Stott* v. *Johnston, supra,* 36 Cal.2d 864, a case similar to the one before us, the same argument was raised. There too it was urged that there can be no recovery for loss of business good will because the nature of such proof is " 'too remote, uncertain and speculative.' " (P. 870.) Refuting this conten-

594

tion the court stated (pp. 873-876): "However, in a case of this kind there must be recognized the difficulty in the proof of damages put upon the plaintiff, and there seems to be no prescribed pattern of precisely what evidence should be introduced. . . . [ ¶ ] . . . The propriety of the allowance of $10,000 to plaintiff for the loss of good will must be considered in relation to the nature of the evidence available to plaintiff in proof of this issue. Analogous considerations have arisen in cases where recovery for loss of future profits were sought, and the courts have been reluctant to reverse a reasonable damage award because the precise amount of damage was not definitely ascertainable. In this regard it appears to be the general rule that while a plaintiff must show with reasonable certainty that he has suffered damages by reason of the wrongful act of defendant, once the cause and existence of damages have been so established, recovery will not be denied because the damages are difficult of ascertainment. (See anno. 78 A.L.R. 858; 25 C.J.S. § 28, pp. 493-496.) In *Grupe* v. *Glick*, . . . , 26 Cal.2d 680, it was declared at page 692 [160 P.2d 832], upon the citation of numerous authorities that 'where the operation of an *established* business is prevented or interrupted, as by a tort or breach of contract or warranty, damages for the loss of prospective profits that otherwise might have been made from its operation are generally recoverable for the reason that their occurrence and extent may be ascertained with reasonable certainty from the past volume of business and other provable data relevant to the probable future sales.' [ ¶ ] . . . The law only requires that the best evidence be adduced of which the nature of the case is capable. (*Steelduct Co.* v. *Henger-Seltzer Co.*, 26 Cal.2d 634, 651 [160 P.2d 804]), and the defendant whose wrongful act gave rise to the injury will not be heard to complain that the amount thereof cannot be determined with mathematical precision. (*Hacker Pipe & Supply Co.* v. *Chapman Valve Mfg. Co.*, 17 Cal.App.2d 265, 267 [61 P.2d 944].) As the record here stands, defendant's objection to the damage award is without avail."

 It is noted that in the instant case the referee was cautious in his evaluation of the evidence upon which his recommended damage award was based. In his report he stated: "I am not persuaded that the *entire* loss of business claimed by plaintiff as shown in [the Loss of Business Recapitulation] was attributable to the breach of the service agreement. As indicated before, plaintiff's theory, upon which the value of its [Loss of

Business Recapitulation] depends, is that a satisfied customer will continue to patronize Dallman Co. and that the volume of purchases will be reasonably constant. . . . Granted that a substantial number of plaintiff's customers terminated or decreased their purchases because of the service difficulties, on the basis of convincing evidence in the record, I am satisfied that it cannot reasonably be inferred that, had the breach of the service agreement not occurred, such customers would have continued doing business with plaintiff in the same or approximate value over a period of eight consecutive years. This is not to say, however, that the method of proving loss of business adopted by plaintiff in showing by means of comparison [the Loss of Business Recapitulation] the amount of business enjoyed from 60 customers who purchased Southern Heater Co. water heaters in the year prior to the breach and the decrease in volume from such customers experienced in the years immediately following is not, under the applicable law, without some probative value. Under all the evidence and reasonable inferences to be drawn therefrom, I find that the plaintiff was caused to lose a substantial amount of business as a direct result of defendant's failure to provide the type of service usually furnished by other water heater manufacturers, for the water heaters which it sold to plaintiff.''

We conclude that the damage award of $250,000 for loss of customers and business good will is reasonably responsive to the issues and supported by the evidence and findings.

MISCELLANEOUS ASSIGNMENTS OF ERROR:

We shall now consider incidental contentions raised throughout Southern's briefs.

■ It is urged that the trial court failed in eight instances to find on matters concerning which request for specific findings were made pursuant to Code of Civil Procedure section 634. Our consideration of the record indicates that the court made findings as to all facts necessary to support the judgment. Section 634 requires no more, even though additional findings are requested. (*Coleman Engineering Co. v. North American Aviation, Inc.,* 65 Cal.2d 396, 410 [55 Cal. Rptr. 1, 420 P.2d 713].)

Southern contends that the previously mentioned ''Loss of Business Recapitulation'' was inadmissible hearsay. The record shows that Southern's attorney, referring to that exhibit, stated, ''I have no objection to it going in.'' Even over objection it would appear that its admission in evidence would

have been proper under Code of Civil Procedure section 1855, subdivision 5, in effect at the time of the trial.

It is insisted by Southern that the damages awarded by the judgment were not reasonably within the contemplation of the parties at the time the alleged agreement was effectuated. The court found that at the time the contract was entered into, Dallman told Southern that unless the agreed upon services were rendered Dallman "would suffer the loss of business, customers and good will." This finding is supported by the evidence.

It is urged that Dallman suffered no damages because over the period 1952-1961 the company suffered a net loss. We deem this to be irrelevant to the issue before us—the amount of damages proximately caused by loss of customers and business good will. If there were such damages the overall business net profits would be lessened or the net loss increased. In either event Dallman has suffered a legally compensable injury.

Finally Southern contends that Dallman failed to mitigate its damages. On this question the report of the referee states: "I find from the evidence that Dallman Co. made reasonable efforts to appease its customers and to render such assistance as it was able in furnishing thermostat and heater replacements and in processing requests for credit to Southern Heater Co." The court's findings state that "plaintiff endeavored to keep its customers satisfied and to persuade defendant to provide service as agreed. In some instances defendant provided a limited measure of service, but defendant failed and refused to comply with the terms of said agreement with respect to service so that except in isolated instances plaintiff was unable to retain the continued patronage of its customers who had purchased heaters." The foregoing portions of the report and findings were adequately supported by the evidence.

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.

A petition for a rehearing was denied June 24, 1968, and appellant's petition for a hearing by the Supreme Court was denied July 24, 1968.